Case 1:07-cv-02735-DC    Document 12-10    Filed 08/30/2007    Page 1 of 1

RECEIVED by the Carrier from the Merchant in apparent external good order and condition (unless otherwise noted herein) the total number of Containers, or if the Goods are not shipped in Containers, the total number of packages or other shipping units specified in the box marked "No. of Pkgs. or Containers" for Carriage subject to all the terms and conditions hereof (including the terms and conditions on the reverse hereof and the terms and conditions of Carrier's applicable Tariff) from the place of receipt or the port of loading, whichever is applicable, to the port of discharge or place of delivery, whichever is applicable. If required by the Carrier, this Bill duly endorsed shall be surrendered in exchange for the Goods or Delivery Order.
In accepting this Bill, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, whether written, printed, stamped or otherwise incorporated, notwithstanding the non-signing of this Bill by the Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all agreements or freight engagements for the shipment of the Goods are superseded by this Bill.

## 1. DEFINITION
The following words whether contained on the front or back have the meanings hereby assigned:
(1) "Bill" means (A) Bill of Lading if this document is issued as a Bill of Lading, or (B) Sea Waybill if this document is issued as a Sea Waybill. Notwithstanding anything else contained in or incorporated into this Bill, if it is issued as a Sea Waybill, it will not be a document of title to the Goods.
(2) "Carriage" means the whole or any part of the operations and service undertaken by the Carrier in respect of the Goods covered by the Bill.
(3) "Carrier" means the party on whose behalf this Bill is issued, as well as the Vessel and/or her Owner, demise charterer (if found hereby), the time chartered and sub-substituted or Underlying Carrier whether any of them is acting as Carrier or bailee.
(4) "COGSA" means the United States Carriage of Goods by Sea Act, approved on April 16, 1936.
(5) "Clean" means for Shipper's packed and sealed containers received in apparent good order and condition. In no circumstances a representation is made as to the weight, contents, measure, quantity, quality, description, condition, marks or value of the Goods therein.
(6) "Container" means any ISO standard container, trailer, transportable tank, flat rack and/or other item of transportation equipment in conformance with ISO standards.
(7) "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill, including storage and demurrage.
(8) "Goods" means the whole or any part of the cargo received from the Merchant and includes any equipment or Container(s) not supplied by or on behalf of the Carrier.
(9) "Hague Rules" means the provisions of the International Convention for the Unification of Certain Rules Relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes any amendments thereto including the Hague-Visby Amendments, 1968.
(10) "Holder" means any Person for the time being in possession of this Bill (if issued as a Bill of Lading) to whom the property in the Goods has passed on, or by reason of the consignment of the Goods or the endorsement of this Bill or otherwise.
(11) "Merchant" includes the Shipper, Holder, consignee or receiver of the Goods or any Person owning or entitled to the possession of the Goods or this Bill and anyone acting on behalf of any such Person.
(12) "Multimodal Transport" arises if the Place of Receipt and/or the place of Delivery are indicated on the face hereof in the relevant spaces.
(13) "On Board" means the Goods are loaded On Board the Vessel named in this Bill, or loaded On Board any of the first mode of transportation used or procured by the Carrier, or loaded on the facilities of any Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of this Bill.
(14) "Person" includes an individual, group, company or other entity.
(15) "Port-to-Port" arises if the Carriage is not Multimodal Transport.
(16) "Sub-Contractor" includes owners and operators of Vessels (other than the Carrier), stevedores, slot chartered owners, terminal and groupage operators, Underlying Carrier, road and rail transport operators and any independent contractor employed by the Carrier in performance of the Carriage.
(17) "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any parts of the transportation the shipment covered by this Bill.
(18) "Vessel" includes the Vessel named on the face hereof together with any ship, craft, lighter, barge, feedership, ferry or other means of transportation substituted in whole or in part, for the Vessel named on the face hereof.

## 2. CARRIER'S TARIFF
The terms and conditions of Carrier's applicable tariff are incorporated herein, including those provisions relating to Container and vehicle demurrage. Copies of the relevant provisions of the applicable tariff are obtainable from the Carrier upon request. In the event of any inconsistency between this Bill and the applicable Tariff, this Bill shall prevail.

## 3. MERCHANT'S WARRANTY
The Merchant warrants that in agreeing to the terms hereof he is, or has the authority of, the person owning, or entitled to possession of the Goods and this Bill.

## 4. EXEMPTIONS AND IMMUNITIES OF SERVANTS, AGENTS, STEVEDORES AND OTHER SUB-CONTRACTORS.
(1) The Carrier shall be entitled to sub-contract the whole of any part of Carriage on any terms whatsoever.
(2) In contracting for the following exemptions and limitation of, and exoneration from, liability, the Carrier is acting as agent and trustee for all other Persons named in this clause. It is understood and agreed that, other than the Carrier, no Person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, agents, Underlying Carriers, Sub-Contractors and/or any other independent contractors whatsoever utilized in the Carriage) is, or shall be deemed to be, liable with respect to the Goods as Carrier, bailee or otherwise. If, however, it shall be adjudged that any Person other than the Carrier or bailee of the Goods, or under responsibility with respect thereto, then all exemptions and limitations of, and exonerations from, liability provided by law or by the terms in this Bill shall be available to such Person.
(3) It is also agreed that each of the aforementioned Persons referred to in the preceding clause are intended beneficiaries, but nothing herein contained shall be construed to limit or relieve from liability to the Carrier for acts arising or resulting from their fault or negligent.

## 5. SCOPE OF THE VOYAGE
The intended carriage may include the use of Underlying Carriers and it is expressly agreed that the use of such Underlying Carriers shall not constitute a deviation. In this regard, the Carrier may at any time, and without notice to the Merchant, use any means of carriage or storage whatsoever, transfer the Goods from one conveyance to another, including transshipping or carrying the Goods on a Vessel other than that specified on the face hereof, proceed by any route in Carrier's discretion (whether or not the nearest or most direct, customary or advertised route) and proceed to, or stay at any place or port whatsoever, load and unload the Goods at any place or port (whether or not such port is named on the face of this Bill as the port of loading or the port of discharge) and store the Goods at any such place or ports, and/or comply with any orders or recommendations given by any government or local authority or any Person or body acting or purporting to act on behalf of such government or authority.
The liberties set out in this clause may be involved by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including loading or unloading other goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing any Persons, (including but not limited to Persons involved with the operation or maintenance of the Vessel) and assisting Vessel(s) in all situations. Anything done in accordance with this clause or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

## 6. LIBERTY CLAUSE
If at anytime the Carriage is, or is likely, to be affected by any situation which has given, or is likely to give rise to danger, injury, loss, delay, risk of capture, seizure or detention, or disadvantage of whatsoever nature to the Vessel, the Carrier, any Underlying Carrier or Sub-Contractor utilized in the Carriage of the Goods, or if such situation makes it in any way unsafe, impracticable or unlawful or against the interest of the Carrier or the Merchant to commence or continue the Carriage of the Goods, the Carrier may, at any time, in its sole discretion:
(1) Unpack the Container(s) or otherwise dispose of the Goods in such way as the Carrier may deem advisable at the risk and expense of the Merchant;
(2) Carry the Goods to the contracted port of discharge of place of delivery, whichever is applicable, by any alternative route or means of transportation to that indicated in this Bill or that which is usual for Goods consigned to that port of discharge or place of delivery and any such additional Freights and charges shall be for the Merchant's account;
(3) Suspend the Carriage of the Goods and store them ashore or afloat upon terms of this Bill and endeavor to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension of the Carriage. Any additional Freight or charges shall be for the account of the Merchant; or
(4) Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the Carrier's responsibility in regard to the goods shall cease. Notwithstanding the abandonment, the Carrier shall nevertheless be entitled to full freight on the goods, and the Merchant shall pay any additional costs of the carriage to, and delivery and storage at such place or port.
The situations referred to in this Clause 6 shall include, but shall not be limited to, those caused by the existence or apprehension of war, whether declared or undeclared, hostilities, warlike or belligerent acts or operations, riots, civil commotions or other disturbances, storm, flood, earthquake or any other act of God; closure of, obstacle in or danger to any canal; blockade of port or place of interest or prohibition of restriction on commerce or trading; quarantine, sanitary or other similar regulations or restrictions; strikes, lock outs or other labor troubles whether partial or general; congestion of port, wharf, sea terminal, or the facilities of any Sub-Contractor or Underlying Carriers used in the Carriage covered by this Bill.

## 7. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.
(1) Port-to-Port Shipment - when loss or damage has occurred between the time of loading the Goods by the Carrier, or any Underlying Carrier, at the port of loading the time of discharge by the Carrier, or any Underlying Carrier, at the port of discharge, the responsibility of the Carrier shall be determined in accordance with Hague Rules or any national law making the Hague Rules, or any amendments thereto including the Hague-Visby Amendments, compulsorily applicable to this Bill. The Carrier shall be under no liability whatsoever for loss of, or damage to, the Goods, however occurring, if such loss or damage arises prior to loading on to, or subsequent to the discharge from, the Vessel. Notwithstanding the foregoing, in the event that any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defense, limitation and liberty set forth in the Hague Rules as applied by this Clause during such additional compulsory period of responsibility. Notwithstanding the preceding provision, in the event that this Bill covers shipments to or from the United States, then COGSA shall be compulsorily applicable and said liberty shall be discharged from the Vessel provided, however, that the Goods at said times are in the actual custody of the carrier or any Underlying Carrier or Sub-Contractor.
(2) Multimodal Transport –
(A) With respect to Multimodal Transportation from, or within the United States, when the Goods are in the custody of the Carrier, or any Underlying Carrier, such Multimodal Transport will be governed by the provisions of Clause 7(1).
(B) In the event Clause 7(1) is held inapplicable to Multimodal Transportation from, to or within the United States then the Carrier's liability will be governed by and be subject to the terms and conditions of the Underlying Carrier's Tariff and/or, where applicable, the ICC Uniform Bill of Lading together with the Underlying Carrier's Tariff which shall be incorporated herein as if set forth at length. Notwithstanding the foregoing, in the event there is a private contract of Carriage between the Carrier and any Underlying Carrier, such Multimodal Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of such contract(s) shall be available to the Merchant at any office of the Carrier upon request.
(C) With respect to land or water Multimodal Transport outside the United States where COGSA is not compulsorily applicable, then the Hague Rules shall apply as per Clause 7(1).
(D) With respect to road Carriage between countries in Europe, liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road ("CMR"), dated May 19, 1956; and during rail Carriage between countries in Europe according to the International Agreement on Railway Transports ("CIM"), dated February 25, 1961.
(E) With respect to rail or road transportation within a State other than the United States, then liability shall be determined in accordance with internal law of such State and/or any International Convention which is compulsorily applicable by the laws of such State. In the absence of such laws or Conventions then the provisions of Clause 7(2)(F) will apply,
(F) In the event the provisions of this sub-section (2)(A-E) are held inapplicable to any phase of the Carriage covered by this Bill whether by local law or International Convention or otherwise, the Carrier shall nevertheless be relieved of liability for loss or damage occurring during the Carriage if such loss or damage was caused by any cause or event which Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.
(3) Unknown Liability – When it cannot be established in whose custody the Goods were when the loss or damage occurred, it shall be conclusively presumed to have occurred during sea Carriage and any liability thereof shall be governed as provided in Clause 7(1) hereof.
(4) Extent of Liability – In any event, the liability of the Carrier shall under no circumstances whatsoever be greater than that of the Sub-Contractor under said Sub-Contractor's contract with the Carrier and the Carrier shall be entitled to all rights, defences, limitations and exemptions from liability contained therein.
(5) Subrogation - When any claims are paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchants against all others, including Underlying Carriers, on account of such loss or damage.
(6) Conflict of law - In the event the Carriage covered by this Bill is subject to two or more compulsory national laws, then the national law of the jurisdiction in which any action is brought shall be applicable.

## 8. CONTAINER PACKED BY CARRIER.
Where the goods, receipt of which is acknowledged on the face of this Bill, are not already contained in Container(s) at the time of such receipt, the Carrier shall be at liberty to pack and carry such Goods in Containers.

## 9. CONTAINER PACKED BY MERCHANT - RESPONSIBILITY.
Where the Goods have been packed into Container(s) by or on behalf of the Merchant, it is mutually agreed that,
(1) Any particulars of this Bill relating to marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value, or other particulars of the contents of such Container(s) are as furnished by the Merchant and are unknown to the Carrier and the Carrier accepts no liability in respect thereof. The acknowledgement of the Carrier is confined to the number and apparent order and condition of Container(s).
(2) The Merchant accepts complete responsibility for the packaging, securing, and stuffing of the contents of the Container(s), the closing and sealing of the Container(s) and the contents of the Container(s) and the contents thereof for Carriage in accordance with the terms of this Bill. The Merchant hereby undertakes to indemnify the Carrier against any loss, damage, expense, liability, penalty and fine directly or indirectly suffered by the Carrier arising from any improper or inadequate packing, stuffing, securing, closing or sealing, or in fitness of the Container(s) or of the contents thereof.
(3) The Carrier shall be at liberty to inspect the Goods without notice at any time or place.
(4) Container(s) are to be delivered from the Carrier with seals intact, the Carrier shall not be liable for any loss or damage to the Goods unless it is proven that such loss or damage was caused by Carrier's negligence. In case the seal of the container(s) is broken by Customs or other governmental authorities for inspection of the Contents of the Container(s), the Carrier shall not be liable for any loss or damage or other consequences arising or resulting therefrom.
(5) The Merchant is obliged to clean the Container(s) at its expense before redelivery to the Carrier so that they are suitable for further service. If the Merchant fails to redeliver the Container(s) as aforesaid, all charges in connection herewith shall be borne by Merchant.

## 10. CARRIER'S CONTAINER - MERCHANT'S RESPONSIBILITY
(1) The Merchant shall inspect the Container(s) which are lent, leased, or in any way furnished by the Carrier before the Goods are packed into such Container(s), and the Container(s) so packed by the Merchant shall be deemed to have been accepted by him in good order and suitable condition for the purpose of Carriage contracted herein. Unless the Merchant provides written notice or remarks in writing concerning the condition of the Container(s) Unless such written notification is given, Merchant is precluded from filing claim against the Carrier for any loss or damage to the Goods by reason of insufficient or unsound condition of the Container(s).
(2) The Merchant shall assume full responsibility and indemnify the Carrier for any loss or damage to the Carrier's Container(s) and/or other equipment which occurred while in his possession or in possession of his agents or carriers engaged by or on behalf of the Merchant.
(3) The Carrier shall not, however, be liable for, and the Merchant shall indemnify and hold the Carrier harmless from and against, any loss or damage to property of the Persons or injuries to Persons occurring while Carrier's Container(s) is in the possession of, or being used by the Merchant, or the Merchant's agents or inland carriers engaged by or on behalf of the Merchant.

## 11. SPECIAL CONTAINERS AND PERISHABLE GOODS.
Unless specially requested by the Merchant in writing, the Carrier is not required to provide anything other than a 20 or 40 foot standard dry Container(s). In the event the Carrier agrees to carry the Goods in a special Container(s) such as a refrigerated, heated or insulated Container(s), Goods of a perishable nature shall be carried in such dry Container(s) without special protection, services or other measures unless it is noted on the reverse side of this Bill that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container(s). The Merchant is required to give written notice of requested temperature settings of the thermostatic controls before receipt of the Goods by the Carrier. When a loaded Container(s) is received, the Carrier will verify that the thermostatic controls are set to maintain Container(s) temperature as requested. The Merchant is responsible for bringing the Goods to the proper temperature before loading the Goods into the Container(s), for the proper stowage of the goods within the Container(s), for setting the temperature (including maintenance and repair) during all times before the Container(s) are delivered to the Carrier and after they are delivered by the Carrier. The Carrier is not responsible for produce deterioration caused by inherent vice, defects in the merchandise or transit times in excess of the produce shelf life. The Merchant is specifically advised that refrigerated, heated, specially ventilated or otherwise specially equipped Container(s) are not equipped to change the temperature of Goods, but solely to maintain the temperature as received into the Container(s) or when the Container(s) was delivered to the Carrier. Carrier shall be deemed to have fulfilled its obligations under this Bill, and shall have no liability whatsoever, if the goods are carried in a range of plus or minus 2.5 degrees Centigrade (4.5 degrees Fahrenheit) in regard to any carrying temperature designated in writing by the Carrier, are carried at Merchant's risk and Carrier assumes no liability whatsoever resulting from Merchant's acts or omissions in failing to request the proper Container(s).

## 12. STOWAGE ON DECK
(1) The Carrier has the right to carry the Goods in Container(s) on deck, whether the Container(s) are owned or leased or have been packed or stuffed, by or on behalf of the Merchant or the Carrier. When Goods in Container(s) are carried on deck, the Carrier is not required to specially mark, or stamp any statement of on deck Carriage on the face hereof, any custom to the contrary notwithstanding. The Goods so carried shall be subject to the applicable legislations as provided for in the Clause Paramount hereof.
(2) Notwithstanding clause 12(1) above in the case of goods which are stated on the face hereof as being carried on deck and which are so carried, the Hague Rules shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay, howsoever arising.

## 13. LIVE ANIMAL, PLANTS AND PERISHABLE GOODS
The Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, birds, reptiles, fish, plants and perishable Goods arising or resulting from any cause whatsoever including the Carrier's negligence or the Vessel's unseaworthiness, and shall have the benefit of all the provisions of this Bill.

## 14. DANGEROUS GOODS AND CONTRABAND
(1) The Merchant undertakes to carry the Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or dangerous nature only upon the Carrier's acceptance of a prior written application by the Merchant for the Carriage of such Goods. Such application must accurately state the nature, name, label, and classification of the goods as well as the method of rendering them innocuous, with the full names and addresses of the Merchant.
(2) The Merchant shall undertake to ensure that the nature of the Goods referred to in the preceding paragraph is distinctly and permanently marked and manifested on the outside of the Goods and Container(s) and shall also undertake to submit the documents or certificates required by any applicable statutes or regulations or by the Carrier.
(3) Whenever the Goods are discovered to have been received by the Carrier without complying with the foregoing or the Goods are found to be contraband or prohibited by any law or regulations of the port of loading, discharge or call or any place or waters during the Carriage, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable to indemnify the Carrier against any kind of loss, damage or liability including loss of freight, and any expenses directly or indirectly arising out of resulting from such Goods.
(4) The Carrier may exercise or enjoy the right or benefit conferred upon the Carrier under the foregoing whenever it is apprehended that the Goods received in compliance with the terms of this clause may seem likely to become dangerous to the Carrier, Vessel, Goods, Underlying Carriers, Sub-Contractors, Persons and/or other property. The Carrier has the right to inspect the contents of the Container(s) and the Goods carried therein at any time and anywhere without the Merchant's agreement and at the risk and expense of the Goods.

## 15. VALUABLE GOODS
The Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, jewelry, radioisotopes, precious metals, precious stones, precious chemicals, bullion, specie, currencies, securities, negotiable instruments, writings, documents, pictures, embroideries, works of art, curios, heirlooms, collections of every nature or any other valuable goods whatsoever including Goods having particular value only for the Merchant, unless the true nature and value thereof have been declare in writing by the Merchant before receipt of the Goods by the Carrier and inserted in this Bill and unless ad valorem freight shall have been fully prepaid thereon.

## 16. LOSS, CONDENSATION, ETC.
It is agreed that superficial rust, oxidation or condensation inside the Container(s) or any like condition due to moisture is not the responsibility of the Carrier, unless said condition arises out of Carrier's failure to provide a seaworthy Container to the Merchant prior to loading. If the Merchant requires special arrangements of care for the Carriage of such Goods, he must request same in writing to the Carrier and said arrangements must be noted on the face of this Bill and all special Freight, as required, must be paid by the Merchant.

## 17. GOVERNMENT REGULATION AND PENALTY
The Merchant shall comply with all regulations or requirements of Customs, Government authorities, port and other authorities, and shall bear and pay all duties, taxes, fines, impose, expenses or losses incurred or suffered by reason of any failure to comply with such regulations, or by reason of any illegal, incorrect or insufficient marking, number or addressing of the Goods, or the discovery of any drugs, narcotics, stowaways or other illegal substances within Container(s) packed by the Merchant or inside Goods supplied by the Merchant, and shall indemnify the Carrier in respect thereof.

## 18. NOTIFICATION AND DELIVERY
(1) Any mention in this Bill of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of his obligations hereunder.
(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff.
(3) If the Merchant fails to take delivery of the Goods, or any part thereof, in accordance with this Bill, the Carrier may without notice remove the Goods, or that part thereof, and/or store the Goods, or that part thereof, ashore, afloat, in the open or undercover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, or that part thereof, shall cease.
(4) The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill.

## 19. FREIGHT AND CHARGES
(1) Freight shall be payable at Carrier's option, on gross intake weight or measurement, or gross discharge weight or measurement, or an ad valorem basis, or per Container or package or customary freight unit basis or any other applicable rate as set forth in Carrier's Tariff. Freight may be calculated on the basis of the description of the Goods furnished by the Merchant, but Carrier may at any time, weight, measure and value the Goods and open packages or customary freight unit to examine contents. In case the Merchant's description is found to be erroneous and additional Freight is payable, the Goods shall be liable for any additional freight and expense incurred in examining, weighing, measuring, fumigating, and valuing the Goods.
(2) Full Freight to the port of discharge or, in case of through transportation to place of delivery named herein and all other charges against the Goods shall be considered completely earned on receipt of the Goods by the Carrier or Underlying Carrier as the case may be, whether the Freight or charges be prepaid or to be stated or intended to be prepaid or to be collected at port of discharge or destination or subsequently, and the Carrier shall be entitled absolutely, to all Freight and charges, and to receive and retain them under all circumstances whatever, whether the Vessel and/or the Goods are lost or not lost, or whether the voyage changed, broken up, frustrated or abandoned.
(3) All Freight and charges shall be paid in full and without any offset, counterclaim or deduction, in the currency named in this Bill or, at the Carrier's option, in its equivalent in local currency at bank demand rates of exchange in New York as of the date payment of Freight shall be due hereunder. Any error in Freight or in charges or in the classification herein of the Goods is subject to correction, and if on correction, the Freight or charges are higher, Carrier may collect the additional amount.
(4) The Merchant and Goods shall be jointly and severally liable to Carrier for the payment of all Freight, demurrage, General Average, salvage and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier. Payment of ocean Freight and charges to a freight forwarder, broker or anyone other than the Carrier, or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk.

## 20. GENERAL AVERAGE AND SALVAGE
(1) General average shall be adjusted, stated and settled at any port or place at the Carrier's option according to the York-Antwerp Rules 1994, and as to matters not provided for in these rules according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. Average agreement and bond, together with such additional security as may be required by the Carrier, shall be furnished before delivery of the Goods.
(2) In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible by statute, contract or otherwise, the Merchant jointly and severally shall contribute with the Carrier to general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect to the goods. If a salving Vessel is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving Vessel or Vessels belonged to strangers. In the event the Master considers that salvage services be needed, the Merchant agrees that the Master may act as his agent to procure such services to the Goods and that the Carrier may act as his agent to settle salvage remuneration.

## 21. BOTH TO BLAME COLLISION
If the Vessel comes into collision with another Vessel as a result of the negligence of another Vessel and any act, neglect or default of the master, mariner, pilot or the servants of the owner of the Vessel and in the navigation or in the management of the Vessel, the Merchant shall indemnify the Carrier against all loss or liability which might incur directly or indirectly to the other or non-carrying Vessel or her owners insofar as such liability represents loss of or damage to his goods or any claim whatsoever of the Merchant paid or payable by the other or non-carrying Vessel or her owners to the Merchant and set-off recouped or recovered by the other or non-carrying Vessel or her owners as part of their claim against the carrying Vessel or the owner thereof. The foregoing provisions shall also apply where the owners, operators or those in charge of any Vessel or Vessels or objects other than, or in addition to, the colliding Vessel or objects are at fault in respect of a collision or contract.

## 22. NOTICE OF CLAIM AND TIME FOR SUIT
Unless notice of loss or damage and a general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods, or, if the loss or damage be not apparent, within three days after delivery, the Goods shall be deemed to have been delivered as described in this Bill. In any event the Carrier shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

## 23. LIMITATION OF LIABILITY
(1) The Carrier doesn't undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use and save as provided in Clause 7 the Carrier shall in no circumstances be liable for any indirect or consequential loss or damage caused by delay. If notwithstanding the foregoing the Carrier is found liable for delay the Carrier's liability shall be limited to the ocean Freight paid under this Bill for the delayed Goods, exclusive of local charges and/or demurrage.
(2) All claims which the Carrier may be liable for shall be adjusted and settled on the basis of the net invoice value of the Goods. In no event shall the Carrier be liable for any loss of profit or any consequential loss.
(3) In the event this Bill covers the Goods moving to or from a port of final destination in the United States, the Carrier's limitation of liability in respect to the Goods shall in no event exceed U.S. Dollars $500 per package, or when the Goods are not shipped in packages, U.S. Dollars $500 per customary freight unit. In the event, to the foregoing would be held inapplicable under the local law of the jurisdiction in which legal proceedings are brought and if the Goods covered by this Bill are subject to the Hague Rules and any legislation making those rules compulsorily applicable to this Bill, the Carrier shall in no event be liable for any loss or damage for or in connection with the Goods in an amount exceeding the limit of 666.67 SDRs per package, or when the Goods are not shipped in packages, 666.67 SDRs per customary freight unit, or 2 SDRs per kilo. If such limitation is inapplicable under local law, the applicable law limitation amount in the country in which the action is brought shall be applicable.
(4) The aforementioned limitations of liability set forth in this provision shall be applicable unless the nature and value of the Goods have been declared by the Merchant before shipment and agreed to by the Carrier, and are inserted in this Bill and the Applicable "ad valorem" freight rate, as set out in Carrier's Tariff, is paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value and if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoiced value of the Goods plus Freight and insurance.

## 24. FIRE
Neither the Carrier nor any Underlying Carrier or Sub-Contractor utilized by the Carrier in the performance in this Bill Contract shall be liable to answer for or make good any loss or damage to the Goods occurring at any time the Goods are considered to be in Carrier's custody including the period before loading, or after discharge from the Vessel, by reason or by means of any fire unless such fire shall be caused by the actual fault or privity of the Carrier.

## 25. LIEN
The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract and/or any contracts with the Merchant and expenses incurred by the Carrier for the account of the Merchant and for general average and salvage contributions to whomsoever do end for the costs of recovering same and for any penalties and assessments charged to the Carrier as a result of its Carriage of the Goods. In order to recover for such charges the Carrier shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant.

## 26. JURISDICTION
Except as otherwise provided specifically herein any claim or dispute arising under this Bill shall be governed by the law of England and determined in the English courts to the exclusion of the courts of any other place. In the event this clause is inapplicable under local law jurisdiction and choice of law lie in either the port of loading or port of discharge at carrier's option.

2006/88

EXHIBIT 9