

**FACE**

RECEIVED by the Carrier from the Shipper in apparent good order and condition unless otherwise indicated herein, the Goods, or package(s) said to contain the Goods, to be carried subject to all the terms and conditions herein.

Delivery of the Goods to the Carrier for Carriage hereunder constitutes the Merchant's acceptance of all the stipulations, exceptions, terms and conditions of this Bill as fully as if signed by him, any contrary local custom or privilege notwithstanding. This Bill supersedes all prior agreements or freight engagements for the Goods.

If required by the Carrier, this Bill (duly endorsed if it is negotiable) must be surrendered in exchange for the Goods or delivery order. Where issued as a Sea Waybill, this Bill is not negotiable or a document of title and delivery shall be made to the named consignee on production of such reasonable proof of identity as may be required by the Carrier.

In witness whereof, the undersigned, on behalf of the Carrier, has signed the number of Bills stated hereunder, all of this tenor and date. Where issued as a Bill of Lading, delivery may be made against only one original Bill in which case, the others shall stand void.

**BACK**

**NOTICE OF LIMITATION OF LIABILITY**

**THE CARRIER'S LIABILITY SHALL BE LIMITED TO AN AMOUNT LESS THAN THE FULL VALUE OF THE GOODS UNLESS THE NATURE AND VALUE OF SUCH GOODS IS DECLARED IN ADVANCE OF SHIPMENT, INSERTED ON THE FACE OF THIS BILL, AND THE APPLICABLE AD VALOREM FREIGHT CHARGES PAID. SEE ARTICLES 2 AND 26 BELOW.**

**1. (Definition)** The following words herein have the meaning hereby assigned:

(a) "Bill" means this document, whether issued as a Bill of Lading or a Sea Waybill, and whether issued in paper or electronic form;

(b) "Carrier" means the party on whose behalf this Bill has been signed – either Nippon Yusen Kaisha or Tokyo Senpaku Kaisha, Ltd. - and the Vessel. Neither Nippon Yusen Kaisha or Tokyo Senpaku Kaisha, Ltd. shall be liable in respect of a Bill not issued on his behalf;

(c) "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill;

(d) "Combined Transport" arises if the Place of Receipt and/or the Place of

EXHIBIT 10



Delivery are indicated herein in the relevant spaces;

(e) "Defence(s)" mean(s) all rights, privileges, immunities, exemptions, exceptions and limitations no matter whether arising by law, by contract, by tariff, or otherwise, and no matter whether they bar, abate or diminish any recovery or relief;

(f) "Goods" means the cargo described herein and, if the cargo is packed into container(s) supplied or furnished by or on behalf of the Merchant, includes the container(s) as well;

(g) "Hindrance" means any real or apprehended hindrance, risk, delay, difficulty or disadvantage of whatsoever kind to the Carriage, the Carrier, Sub-Contractor(s), the Vessel, or the Goods or any property including without limitation the existence or apprehension of (i) acts of God; (ii) war, hostilities, civil commotions, acts of public enemies, or terrorism; (iii) governmental restraints on commerce, shipping or trading (including voluntary import or export quotas arising from the threat of governmental restraints); (iv) quarantine, sanitary or other similar regulations or restrictions; (v) epidemics or diseases; (vi) work stoppages, strikes, or lockouts, whether or not conducted by employees of the Carrier or Sub-Contractor(s); (vii) accidents, casualties, fire, or transportation disasters; (viii) congestion of, closure of, obstacle in or danger to any canal, strait, waterway, port, wharf, sea terminal, or any other place; or (ix) bad weather, shallow water, ice, earthquake, landslip or other obstacles in the Carriage;

(h) "Merchant" includes the Shipper, consignor, consignee, owner and receiver of the Goods, and the holder of this Bill;

(i) "Person" includes an individual, group, company, or other entity;

(j) "Shipper" means Person(s) described as shipper on this Bill and/or Person(s) who entered into the contract of Carriage;

(k) "Sub-Contractor" includes owners and operators of the Vessel or any other vessel (other than the Carrier), sea, water, rail, road, air or other transport operators or carriers, stevedores, terminal operators, warehousemen, and any independent contractors employed by the Carrier in performance of the Carriage and any sub-contractor thereof; and

(l) "Vessel" means the vessel named herein and includes any vessel, ship, craft, lighter or other means of transport which is or shall be substituted, in



whole or in part, for her.

**2. (Clause Paramount)** (1) This Bill shall have effect subject to the provisions of the International Carriage of Goods by Sea Act, 1957 of Japan, as amended on 3 June, 1992 (hereinafter called the "Act"), unless it is adjudged that any other legislation of a nature similar to the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August, 1924, or the amendments by the Protocol signed at Brussels on 23 February, 1968, or the amendments by the Protocol signed at Brussels on 21 December, 1979, including without limitation, the Carriage of Goods by Sea Act, 1936, of the United States (hereinafter called "US COGSA")(such similar legislation and US COGSA shall hereinafter be called "Hague Rules Legislation"), compulsorily applies to this Bill, in which case it shall have effect subject to the provisions of such Hague Rules Legislation. Notwithstanding anything else in this Bill, on all the Carriage to or from the United States of America (this expression includes its districts territories and possessions), this Bill shall have effect subject to US COGSA.

(2) The Act or Hague Rules Legislation, whichever is applicable pursuant to Article 2(1) shall also apply and govern the Carriage before the Goods are loaded on and after they are discharged from the Vessel and throughout the entire time the Goods are in custody of the Carrier, its agents, servants, representatives and Sub-Contractors.

The Act or Hague Rules Legislation shall be deemed to be incorporated herein. If any provision of this Bill is held to be repugnant to any extent to the Act or Hague Rules Legislation or to any other laws, statutes or regulations applicable to the contract evidenced by this Bill, such provision shall be null and void to that extent but no further.

(3) Where this Bill is issued as a Sea Waybill, this Bill shall have effect subject to the CMI Uniform Rules for Sea Waybills, which are deemed to be incorporated herein; provided, however, that if any provisions of such Rules are inconsistent with those of this Bill, the latter shall prevail.

**3. (Governing Law and Jurisdiction)** The contract evidenced by or contained in this Bill shall be governed by Japanese law except as may be otherwise provided herein. Notwithstanding anything else contained in this Bill or in any other contract, any and all actions against the Carrier in respect of the Goods or arising out of the Carriage shall be brought before

the Tokyo District Court in Japan to the exclusion of the jurisdiction of any other courts whilst any such actions against the Merchant may be brought before the said Court or any other competent court at the Carrier's option. Where the Goods are subjected to adverse or competing claims, the Carrier may place the Goods in the custody of a court of competent jurisdiction for a determination of ownership and/or right to possession. The Carrier shall have no liability to the Merchant arising out of such placement. The Merchant consents to the exclusive jurisdiction of such Court.

**4. (Carrier's Tariff)** The terms of the Carrier's applicable Tariff are deemed to be incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the case of inconsistency between this Bill and the applicable Tariff, this Bill shall prevail.

**5. (Limitation Statutes)** Nothing in this Bill shall operate to limit or deprive the Carrier of any Defence.

**6. (Sub-Contracting and Indemnity)** (1) The Carrier shall be entitled to sub-contract the Carriage on any terms whatsoever, including liberty to further sub-contract.

(2) The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub-Contractors), other than the Carrier, which imposes or attempts to impose upon any such Person, or any vessel owned by any such Person, any liability whatsoever in connection with the Goods or the Carriage, whether or not arising out of negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier pursuant to Article 29 hereof. Without prejudice to the foregoing every such Person shall have the benefit of every Defence available to the Carrier including Article 3 hereof as if such provisions were expressly for his benefit; and in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent and trustee for such Person.

(3) The provisions of Article 6(2), including but not limited to the undertakings of the Merchant contained therein, shall extend to claims or allegations of whatsoever nature against other Persons chartering space on the Vessel.

(4) The Merchant further undertakes that no claim or allegation in respect of

the Goods shall be made against the Carrier by any Person other than in accordance with the terms and conditions of this Bill which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage, whether or not arising out of negligence on the part of the Carrier and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier pursuant to Article 29 hereof.

**7. (Modes, Route of Transport)**

The Carrier may at any time and without notice to the Merchant; (i) use any means of transport or storage whatsoever; (ii) transfer the Goods from one conveyance to another including trans-shipping or carrying the same on another vessel or means of transport other than the Vessel named herein; (iii) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often and in any order; (iv) load and unload the Goods at any place or port (whether or not any such port is named herein as the port of loading or port of discharge) and store the Goods at any such place or port. The Vessel shall at all times have liberty to drydock, go to repair yards, shift berths, and shift or restow cargo, and take in fuel or stores. These liberties may be invoked by the Carrier for any purpose whatsoever and anything done in accordance with this Article or any delay arising therefrom shall not be deemed to be a breach by the Carrier of the contract evidenced by this Bill or a deviation.  Should the Carrier be held liable in respect of any such action, the Carrier shall be entitled to the full benefit of the Carrier's Defences.

**8. (Responsibility)** (1) The Carrier shall not be responsible for the loss of or damage to or in connection with the Goods or the Carriage occurring before receipt of the Goods by the Carrier at the place of receipt or port of loading or after delivery by the Carrier at the port of discharge or place of delivery.

(a) The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or in time to meet any particular market or use and the Carrier shall not be responsible for any direct or indirect loss or damage which is caused through delay.  If the Carrier is nevertheless adjudged to be liable for delay, then the Carrier shall have the same Defences in respect of such delay as he would have for



physical loss or damage.

(b) The information in the columns "Final Destination" and "Export References" which is inserted in accordance with Merchant declaration herein is solely for the purpose of the Merchant's reference and shall not give rise to any responsibility on the part of the Carrier.

(2) It is contemplated that the Carriage hereunder may be in Combined Transport. If it is established that loss of or damage to or in connection with the Goods or the Carriage occurred while in custody of the Carrier, Sub-Contractors, or their respective agents, servants, or representatives, when the Carriage is Combined Transport, the Carrier's responsibility shall be determined in the following manner:

(a) If it is further established that such loss or damage occurred during the period from the time the Goods arrived at the sea terminal at the port of loading to the time when they left the sea terminal at the port of discharge or during any previous or subsequent part of the Carriage by sea or inland waterways, the Carrier shall be responsible for such loss or damage subject to the provisions of this Bill and the Act or applicable Hague Rules Legislation (excluding the scope of application provisions therein) as the case may be.

(b) Notwithstanding Article 2(2), the Carrier shall have the benefit of all the Sub-Contractor's Defences and, without prejudice to any of the Carrier's other Defences including without limitation the "Governing Law and Jurisdiction" clause herein, the Carrier's liability shall be no greater than that of the Sub-Contractor.

(c) For the Goods carried in Combined Transport, if it is established that the loss of or damage to or in connection with the Goods or the Carriage occurred during the period from the receipt by the Carrier at the place of receipt to the delivery by the Carrier at the place of delivery but the Merchant is unable to prove where the Goods were when the loss or damage occurred, the Act or applicable Hague Rules Legislation, as the case may be, as provided for in Article 2 hereof shall apply.   In any action by the Carrier for indemnity or contribution, this paragraph shall not create an inference or presumption that the loss or damage occurred in the Carrier's custody.

(d) Subject to Article 8(2)(b) above, where the Combined Transport is from, to or within the United States the liability of the Carrier shall be governed by



the provisions of Article 2 hereof.

**9. (Liberties)** (1) In any situation whatsoever, whether real or anticipated, before or during the Carriage, which may give rise to any Hindrances in the judgement of the Carrier (meaning for the purpose of this Article the Carrier, Sub-Contractor, and their respective agents, servants and representatives), then the Carrier shall be entitled to:

(i) if the Carriage has already commenced, unpack the container(s), and/or suspend, cancel or continue loading onto or discharge from the Vessel or any other means of transport, store on board the Vessel or any other means of transport, in warehouses or open areas, return or send to the port of loading or place of receipt or any other port or place selected by the Carrier and require the Merchant to take delivery of thereat, and/or otherwise dispose of, the Goods or any part thereof in such way as the Carrier may deem advisable at the sole risk and the expense of the Merchant; or

(ii) if the Carriage has not yet commenced, cancel the Carriage or the contract of Carriage; all without compensation to the Merchant.

Any such actions shall constitute complete and final delivery and full performance of the contract of Carriage, with the Carrier entitled to full freight hereunder, but freed from any further responsibility in respect of the Goods. Thereafter, any and all operations and services which the Carrier may (but shall not be required to) undertake in respect of the Goods shall be undertaken solely as agent for the Merchant and not as a carrier, bailee, custodian, or warehouseman of the Goods. The Carrier shall be entitled to compensation for such operations and services together with reimbursement for all expenses, all of which shall be secured by a lien in the Carrier's favour against the Goods and the documents related thereto.

(2) The Carrier, in addition to all other liberties provided for in this Article, shall have liberty to comply with orders, directions, regulations, recommendations or suggestions in respect of the Goods or the Carriage given by any Person acting or purporting to act with the authority of any government, quasi-government or public authority or by any Person having, under the terms of any insurance on the Vessel, the right to give such orders, directions, regulations, recommendations or suggestions. Such compliance shall not be a breach of the contract of Carriage by the Carrier or a deviation.

**10. (Unknown Clause)** Any reference herein to marks, numbers, description, quality, quantity, gauge, weight, measure, nature, kind, value and any other particulars of the Goods is as furnished by the Merchant, and the Carrier shall not be responsible for the accuracy and completeness thereof. The Merchant warrants to the Carrier that the particulars furnished by him are accurate or complete and, if they are nevertheless inaccurate or incomplete, undertakes to indemnify the Carrier pursuant to Article 29 hereof.

**11. (Use of Container)** Where the Goods are not already packed into container(s) at the time of receipt, the Carrier shall be at liberty to pack and carry them in any type of container(s).

**12. (Carrier's Container)** (1) The Merchant shall assume full responsibility for and shall indemnify the Carrier against any loss of or damage to the Carrier's container(s) and other equipment(s) which occurs while in the possession or control of the Merchant, his agents, servants or independent contractors engaged by or on behalf of the Merchant.

(2) The Carrier shall in no event be liable for and the Merchant shall indemnify and hold the Carrier harmless from and against any loss of or damage to property of other Persons or injuries or death to other Persons caused by the Carrier's container(s) or the contents thereof during handling by, or while in the possession or control of the Merchant, his agents, servants or independent contractors engaged by or on behalf of the Merchant.

(3) If container(s) supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty container(s), with interiors brushed and clean, to the point or place designated by the Carrier, agents or servants of the Carrier, within the time prescribed. Should container(s) not be returned within the time prescribed in the Carrier's applicable Tariff, the Merchant shall be liable for any detention, loss or expenses which may arise from such non-return.

**13. (Container Packed by Merchant)** If the Goods received by the Carrier are container(s) into which contents have been packed by or on behalf of the Merchant,

(a) this Bill is prima facie evidence of the receipt only of the number of container(s) as shown herein; and the order and condition of the contents and any particulars thereof (including marks and numbers, number and kind

of packages or pieces, description, quality, quantity, gauge, weight, measure, nature, kind and value) are unknown to the Carrier, who accepts no responsibility in respect thereof, and

(b) the Merchant warrants that the stowage of the contents of container(s) and their closing and sealing are safe and proper and also warrants that the container(s) and contents thereof are suitable for handling and the Carriage in accordance with the terms hereof including Article 16; in the event of the Merchant's breach of said warranties, the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods or the Carriage resulting from said breach and the Merchant shall be liable for loss of or damage to any other property, or for personal injury or death or the consequences of any other accidents or events whatsoever and shall indemnify the Carrier pursuant to Article 29 hereof, and

(c) the Merchant shall inspect the container(s) when the same are furnished by or on behalf of the Carrier, and they shall be deemed to have been accepted by the Merchant as being in sound and suitable condition for the purpose of the Carriage, unless he gives notice to the contrary in writing to the Carrier, and

(d) if the container(s) are delivered by the Carrier with seals intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the container(s), and

(e) the Carrier shall be at liberty to open the container(s) and to inspect the contents of the container(s) without notice to the Merchant at such time and place as the Carrier may deem necessary and all expenses incurred therefrom shall be borne by the Merchant; in case the seals of container(s) are broken by the customs or other authorities for inspection of the contents of the said container(s), the Carrier shall not be liable for any loss, damage, expenses or any other consequences arising or resulting therefrom.

**14. (Special Container)** (1) The Carrier shall not undertake to carry the Goods in refrigerated, heated, insulated, ventilated or any other special container(s), nor to carry special container(s) packed by or on behalf of the Merchant as such; but the Carrier will treat such Goods or container(s) only as ordinary goods or dry container(s) respectively, unless (i) special arrangements for the carriage of such Goods or container(s) have been agreed to in writing between the Carrier and the Merchant and (ii) such

special arrangements are noted *herein* and (iii) special freight as required has been paid. The Carrier shall not accept responsibility for the function of special container(s) supplied by or on behalf of the Merchant.

(2) As regards the Goods which have been agreed to be carried in special container(s) the Carrier shall exercise due diligence to maintain the facilities of the special container(s) while they are in his actual custody and control, and shall not be liable for any kind of loss of or damage to the Goods caused by latent defects, derangement or breakage of facilities of the container(s).

(3) If the Goods have been packed into refrigerated container(s) by the Carrier and the particular temperature range requested by the Merchant is inserted in this *Bill*, the Carrier will set the thermostatic controls within the requested temperature range, but does not guarantee the maintenance of such temperature inside the container(s).

(4) If the cargo received by the Carrier is refrigerated container(s) into which the contents have been packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly. The Carrier shall not be liable for any loss of or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation and further does not guarantee the maintenance of the intended temperature inside the container(s).

**15. (Dangerous Goods, Contraband and Other Special Cargoes)**
(1) The Carrier undertakes to carry the Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or dangerous nature only upon the Carrier's acceptance of a prior written application by the Merchant for the carriage of such Goods. Such application must accurately state the nature, name, label and classification of the Goods as well as the method of rendering them innocuous, with the full names and addresses of the Shipper and the consignee.
(2) The Merchant undertakes that the nature of the Goods referred to in the preceding paragraph is distinctly and permanently marked and manifested on the outside of the package(s) and container(s) and shall also undertake to submit the documents or certificates required by any applicable laws or

regulations or by the Carrier.

(3) Whenever the Goods are discovered to have been received by the Carrier without complying with Article 15(1), (2), or (6), or the Goods are found to be contraband or prohibited by any laws or regulations of the port of loading, discharge or call or any place or waters during the transport, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable for and indemnify the Carrier against any kind of loss, damage or liability including loss of freight, and any expenses directly or indirectly arising out of or resulting from such Goods.

(4) The Carrier may exercise or enjoy the right or benefit conferred upon the Carrier under the preceding paragraph whenever it is apprehended that the Goods received in compliance with Article 15(1), (2), and (6) become dangerous to the Carrier, Vessel, cargo, Persons and/or other property.

(5) The Carrier has the right to inspect the contents of the package(s) or container(s) at any time and anywhere without the Merchant's agreement but only at the risk and expense of the Merchant.

(6) The Merchant shall be obligated to provide the Carrier, in writing and in advance of shipment, with all up to date information within his knowledge as to requirements for the safe Carriage of the Goods and any other information with respect to the Goods, the Carriage and/or the Merchant required by any applicable law or regulation or by the Carrier.

**16. (Deck Cargo)** (1) The Carrier has the right to carry the Goods in container(s) under deck or on deck.

(2) When the Goods are carried on deck, the Carrier shall not be required to specially note, mark or stamp any statement of "on deck stowage" on this Bill, any custom to the contrary notwithstanding. The Goods so carried shall be subject to the Act or applicable Hague Rules Legislation as the case may be, and the stowage of such Goods shall constitute under deck stowage for all purposes including general average.

(3) The Carrier shall not be liable in any capacity whatsoever for any non-delivery, misdelivery, any loss of or damage to or in connection with the Goods or the Carriage which are carried on deck and specially stated on this Bill to be so carried, whether or not caused by the Carrier's negligence or the Vessel's unseaworthiness.

**17. (Live Animals and Plants)** The Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, birds, reptiles, and fish and plants arising or resulting from any cause whatsoever including the Carrier's negligence or the Vessel's unseaworthiness, and shall have the benefit of all the provisions of this *Bill*, except those inconsistent with the provisions of this Article.

**18. (Valuable Goods)** The Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, *jewelry*, precious stones, precious metals, radioisotopes, precious chemicals, bullion, specie, currency, negotiable instruments, securities, writings, documents, pictures, embroideries, works of art, curios, heirlooms, collections of every nature or any other valuable goods whatsoever including goods having particular value only for the Merchant, unless the true nature and value of the Goods have been declared in writing by the Merchant before receipt of the Goods by the Carrier, and the same is inserted on the face of this *Bill* and ad valorem freight has been prepaid thereon.

**19. (Delivery by Marks)** (1) The Carrier shall not be liable for failure of or delay in delivery in accordance with marks unless such marks shall have been clearly and durably stamped or marked upon the Goods, package(s) and container(s) by the Merchant before they are received by the Carrier in letters and numbers not less than two inches high, together with names of the port of discharge and place of delivery.
(2) In no circumstances shall the Carrier be responsible for delivery in accordance with other than leading marks.
(3) The Merchant warrants to the Carrier that the marks on the Goods, package(s) and container(s) correspond to the marks shown on this Bill and also in all respects comply with all laws and regulations in force at the port of discharge or place of delivery, and shall indemnify the Carrier against all loss, damage, expenses, penalties and fines arising or resulting from incorrectness or incompleteness thereof.
(4) Goods which cannot be identified as to marks and numbers, cargo sweepings, liquid residue and any unclaimed goods not otherwise accounted for shall be allocated for the purpose of completing delivery to the various merchants of goods of like character, in proportion to any

apparent shortage, loss of weight or damage, and such goods or parts thereof shall be accepted as full and complete delivery.

**20. (Delivery)** (1) The Carrier shall have the right to deliver the Goods at any time from or at the Vessel's side, custom house, warehouse, wharf, quay or any other place designated by the Carrier within the geographic limits of the port of discharge or place of delivery shown herein.

(2) In any case the Carrier's responsibility shall cease when the Goods have been delivered to the Merchant or inland carriers or any other Person entitled to receive the Goods on his behalf at the place designated by the Carrier. Delivery of the Goods to the custody of customs or any other authorities shall constitute final discharge of the Carrier's responsibility hereunder.

(3) In case the Goods received by the Carrier are container(s) into which contents have been packed by or on behalf of the Merchant, the Carrier shall only be responsible for delivery of the total number of container(s) shown herein, and shall not be required to unpack the container(s) and deliver the contents thereof in accordance with brands, marks, numbers, sizes or types of packages or pieces; provided, however, that at the Carrier's absolute discretion and upon the Merchant's demand in writing reaching the Carrier at least 3 days prior to the scheduled date of arrival of the Vessel at the port of discharge concerned, container(s) may be unpacked and the contents thereof may be delivered by the Carrier to one or more receivers in accordance with the written instructions, in which case if the seal of the container(s) is intact at the time of unpacking, all the Carrier's obligations hereunder shall be deemed to have been discharged and the Carrier shall not be responsible for any loss of or damage to the contents arising or resulting from such delivery and the Merchant shall be liable for an appropriate adjustment of the freight and any additional charges incurred.

(4) In case the Goods have been packed into container(s) by the Carrier, the Carrier shall unpack the container(s) and deliver the contents thereof and shall not be required to deliver the Goods in container(s); provided, however, that at the Carrier's absolute discretion and subject to prior arrangement between the Shipper and the Carrier, Goods may be delivered to the Merchant in container(s), in which case if the container(s) are delivered by the Carrier with seals intact, such delivery shall be deemed as

full and complete performance of the Carrier's obligations hereunder and the Carrier shall not be responsible for any loss of or damage to the contents of the container(s).

(5) Optional delivery shall be granted only when arranged prior to the time of receipt of the Goods and so expressly provided herein. The Merchant desiring to avail himself of the option so expressed must give notice in writing to the Carrier at the first port of call of the Vessel named herein in the option at least 48 hours prior to the Vessel's arrival there, otherwise the Goods shall be landed at any of the optional ports at the Carrier's option and the Carrier's responsibility shall then cease.

(6) The Carrier shall take reasonable care to ascertain the identity of the Merchant entitled to delivery of the Goods hereunder and shall have no liability whatsoever and howsoever arising for misdelivery unless due to failure to take such reasonable care.

(7) Where this Bill is issued as a Sea Waybill, delivery of the Goods shall be made to the named consignee upon production of such proof of identity as may be required by the Carrier.  The consignee will not be required to produce an original of this Sea Waybill unless requested to do so by the Carrier in its absolute discretion.

(8) Where this Bill is issued as a Sea Waybill, the Shipper may opt to transfer all right of control over the Goods to the consignee provided that (a) such option is exercised not later than the time of receipt of the Goods by the Carrier, and (b) the transfer is noted in this Bill. Subject to the foregoing, and subject to applicable law and the Carrier's consent, on production of the full sets of the Sea Waybill the Shipper may stop the Carriage or delivery of the Goods or change the consignee, the port of discharge and/or the place of delivery provided that notice to that effect is given to the Carrier (i) in writing, (ii) prior to the consignee claiming delivery of the Goods after their arrival at place of delivery, and (iii) sufficiently early to allow the Carrier a reasonable opportunity to implement the request.  The Shipper shall indemnify, defend and hold the Carrier harmless from all consequences of the Carrier complying with said request.

**21. (Fire)** The Carrier shall not be responsible for any loss of or damage to or in connection with the Goods or the Carriage arising or resulting from fire occurring at any time and even though before loading on or after discharge

from the Vessel, unless caused by the actual fault or privity of the Carrier.

**22. (Lien)** (1) The Carrier shall have a lien on the Goods, which shall survive delivery, for all freight, dead freight, demurrage, storage, general average, salvage, damage, loss, charges, expenses, and any other sums whatsoever payable by or chargeable to or for the account of the Merchant under this Bill and any other contracts of carriage with the Merchant whatsoever, whether they may be relevant to this Bill or not, and the cost and expenses of recovering the same including attorneys' fees, and The Carrier may sell the Goods privately or by public auction without notice to the Merchant. If on sale of the Goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

(2) If the Goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods will become deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien and without any responsibility attaching to him, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant.

**23. (Freight and Charges)** (1) Freight may be calculated on the basis of the particulars of the Goods furnished by the Merchant who shall be deemed to have guaranteed to the Carrier the accuracy of the contents, weight, measure or value as furnished by him, at the time of receipt of the Goods by the Carrier, but the Carrier may, for the purpose of ascertaining the actual particulars, at any time, open the container(s) and/or package(s) and examine contents, weight, measure and value of the Goods at the risk and expense of the Merchant. In case of incorrect declaration of the contents, weight, measure or value of the Goods, the Merchant shall be liable for and bound to pay to the Carrier, (i) the balance of freight between the freight charged and that which would have been due had the correct details been given, (ii) as and by way of liquidated and ascertained damages, a sum equal to the correct freight, plus (iii) all expenses including attorneys' fees incurred by the Carrier in ascertaining the inaccuracies and collecting all sums due to him.

(2) Full freight to the port of discharge or place of delivery named herein shall be considered as completely earned on receipt of the Goods by the Carrier, whether the freight be stated or intended to be prepaid or to be collected at destination. The Carrier shall be entitled to all freight and other

charges due hereunder, whether actually paid or not, and to receive and retain them irrevocably under any circumstances whatsoever, whether the Vessel and/or the Goods be lost or not, or the Carriage be broken up or frustrated or abandoned at any stage of the entire transit. Full freight shall be paid on damaged or unsound Goods.

(3) The payment of freight and/or charges shall be made in full and in cash without any offset, counterclaim or deduction. Where freight is payable at the port of discharge or place of delivery, such freight and all other charges shall be paid in the currency named in this Bill, or at the Carrier's option, in other currency subject to the regulations of the freight conference concerned or custom at the place of payment.

(4) Goods once received by the Carrier cannot be taken away or disposed of by the Merchant except upon the Carrier's consent and against payment of full freight and compensation for any loss sustained by the Carrier through such taking away or disposal. If the Goods are not available when the Vessel is ready to load, the Carrier is relieved of any obligation to load such Goods, and the Vessel may leave the port without further notice, and dead freight shall be paid by the Merchant.

(5) The Merchant shall be liable for, and indemnify the Carrier against all dues, duties, taxes and charges including consular fees levied on the Goods, or all fines and/or loss sustained or incurred by the Carrier in connection with the Goods howsoever caused, including the Merchant's failure to comply with laws and regulations of any government or public authorities in connection with the Goods or to procure consular, Board of Health or other certificate to accompany the Goods. The Merchant shall be liable for return freight and charges on the Goods refused exportation or importation by any government or public authorities. If the Carrier is of the opinion that the Goods stand in need of sorting, inspecting, mending or repairing or reconditioning or otherwise require protecting or caring for, the Carrier may carry out such work at the cost and expense of the Merchant and the Goods. The Merchant authorizes the Carrier to pay and/or incur all such charges and expenses and to do any matters mentioned above at the expense of and as agents for the Merchant and to engage other Persons to regain or seek to regain possession of the Goods and do all things deemed advisable for the benefit of the Goods.

(6) The parties defined herein as the Merchant shall be jointly and severally



liable to the Carrier for the payment of all freight and charges and for the performance of the obligation of each of them hereunder.

**24. (Notice of Claim and Time for Suit)** (1) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage be not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described in this Bill.

(2) Where the Goods have been or may have been lost or damaged during the custody of Sub-Contractors, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless the Merchant gives the Carrier notice of loss and notice of claim in time for the Carrier to comply with the requirements of the Sub-Contractors. It is the Merchant's obligation to inquire as to those requirements. The Carrier is not obligated to volunteer that information.

(3) In any event, except as provided in Article 24(2) above, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

**25. (Defences and Limits for the Carrier)** The defences and limits of liability provided for in this Bill shall apply in any action against the Carrier for all liability whatsoever in respect of the Goods whether the action be founded in contract, in tort or otherwise.

**26. (Limitation of Liability)** (1) The Carrier shall not in any event be liable for any loss of or damage to or in connection with the Goods or the Carriage in an amount exceeding 666.67 Units of Account per package or unit or 2 Units of Account per kilogramme of gross weight of the Goods lost or damaged, whichever is the higher. The Unit of Account mentioned in the preceding sentence is the Special Drawing Right (SDR) as defined by the International Monetary Fund. Notwithstanding anything else contained herein, if this Bill covers the Goods moving to or from the United States of America, and if the following is not invalid or unenforceable under the local law of the jurisdiction in which legal proceedings are brought, then the amount of the foregoing limitation shall instead be U.S.$500 per package or customary freight unit. The limitations under this paragraph shall not

prejudice the application of lower limitation of liability applicable under Article 8(2)(b), if any.

(2) The limitations referred to in Article 26(1) shall apply unless the nature and value of such Goods have been declared by the Merchant before shipment and inserted on the face of this Bill and extra freight has been paid as required. A declaration of higher value, if inserted on the face of this Bill, shall be prima facie evidence of the value of the Goods, but shall not be conclusive on the Carrier.

(3) Where the Goods have been either packed into container(s) or unitized into similar article(s) of transport by or on behalf of the Merchant, and when the number of packages or units packed into container(s) or unitized into similar article(s) of transport is not enumerated herein, each container or similar article including the entire contents thereof shall be considered as one package for purpose of the application of the limitation of liability provided for herein.

(4) When the Carrier is liable for compensation in respect of any loss of or damage to the Goods, such compensation shall be calculated by reference to the value of the Goods at the place and time they are discharged from the Vessel, or at the place and time they should have been discharged. For the purpose of determining the extent of the Carrier's liability for loss of or damage to the Goods, the value of the Goods is presumed to be the invoice value plus freight and insurance, if paid. In no event shall the Carrier be liable for any loss of possible profit or any consequential loss.

**27. (General Average, New Jason Clause)** (1) General average shall be adjusted, stated and settled at Tokyo or any other port or place at the Carrier's option according to the York-Antwerp Rules, 1994, and as to matters not provided for by these Rules, according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. The general average statement shall be prepared by the adjusters appointed by the Carrier. Average agreement or bond and such cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon and any other additional securities as the Carrier may require shall be furnished by the Merchant to the Carrier before delivery of the Goods.

(2) The New Jason Clause as published by the Baltic and International

| |
|---|
| Maritime Council is hereby incorporated into this Bill. |
| **28. (Both to Blame Collision Clause)** The Both to Blame Collision Clause as published by the Baltic and International Maritime Council is hereby incorporated into this Bill. |
| **29. (Indemnity)**<br><br>The Merchant shall indemnify, defend and hold the Carrier harmless from all consequences of any (i) failure by the Merchant to comply with any provision of this Bill, Carrier's applicable Tariff, and/or any applicable circulars or contracts, laws or regulations, and/or (ii) breach of any of the Merchant's representations or warranties or undertakings. The Merchant's obligation to so indemnify, defend and hold harmless shall include reimbursement of all expenses or amounts spend or incurred, including attorneys' fees, penalties or liabilities imposed, or loss of profit, directly or indirectly arising from or in connection with such failure or breach and shall not be defeated or reduced by any negligence on the part of or attributable to the Carrier. |
| **(Local Clause)** In case this Bill covers the Goods moving to or from the United States of America and if it shall be adjudged that the US COGSA governs this Bill, Article 16(3) and Article 17 hereof shall be replaced by the following terms; "With respect to live animals, birds, reptiles and fish and plants and the Goods carried on deck and stated herein to be so carried, all risks of loss or damage by perils inherent in or incidental to such carriage shall be borne by the Merchant, but in all other respects in connection with the custody and carriage of such Goods, the Carrier shall have the benefit of the provisions of US COGSA, notwithstanding Section 1(c) thereof, and of all the terms and conditions of this Bill except those inconsistent with the provisions of this Article." |