Charles L. Howard (admitted *pro hac vice*)
Keenan Cohen & Howard P.C.
One Pitcairn Place
165 Township Line Rd.
Jenkintown, PA 19046
(215) 609-1110

and

Barry N. Gutterman
Gutterman & Associates
The Lincoln Building
60 East 42nd Street, 46th Floor
New York, NY 10165

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC.<br><br>*Plaintiffs,*<br><br>- against -<br><br>NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK SOUTHERN CORPORATION, and THE KANSAS CITY SOUTHERN RAILWAY COMPANY<br><br>*Defendants.* | NO.: 07 CIV. 2735<br><br>JUDGE CHIN<br><br>**DEFENDANTS' COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS PER LOCAL RULE 56.1** |

  Defendants, Norfolk Southern Corporation ("NSC"), Norfolk Southern Railway Company ("NSR") and Kansas City Southern Railway Company ("KCS") (collectively, "the Defendants") by and through their attorneys, Keenan Cohen & Howard P.C., hereby respond to Plaintiffs' statement of undisputed material facts per Local Rule 56.1 ("Plaintiffs Rule 56.1 Statement") and state as follow:

1. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Waybills" referenced by Plaintiffs are documents which speak for themselves. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

2. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Bill of Lading" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

3. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Waybill" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

4. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Bill of Lading" referenced by Plaintiffs is a document which

speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

5. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Waybill" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

6. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied. By way of further response, Defendants state that the "Waybill" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

7. The Defendants admit that the containers identified in paragraphs 1 – 6 of Plaintiffs' Rule 56.1 Statement were placed on rail cars in Long Beach, California, for rail transport.

8. The Defendants admit that a train operated by defendant KCS derailed on April 18, 2006, in Texas, and that the containers identified in paragraphs 1-6 of Plaintiffs' Rule 56.1 Statement were on the train that derailed.

9. The Defendants admit that certain of the containers identified in paragraphs 1 – 6 of Plaintiffs' Rule 56.1 Statement were damaged as a result of the derailment. The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the remaining allegations contained in the corresponding paragraph of Plaintiffs' Rule 56.1 Statement and, therefore, those allegations are denied.

10. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

11. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

12. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

13. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

14. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

15. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

16. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

17. The bill of lading referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

18. NSR admits that it produced in discovery documents entitled "Miscellaneous Waybill" for each of the containers referenced by Plaintiffs in paragraphs 1 – 6 in Plaintiffs' Rule 56.1 Statement.

19. The waybill referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

20. NSR admits that it produced in discovery Sections 8.1 – 8.8 of its Intermodal Rules Circular No. 2 ("NSR's Rules Circular"). NSR's Rules Circular is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

21. The "Rules Circular" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

22.     The "response" referenced by Plaintiffs is a document which speaks for itself. To the extent that Plaintiffs' characterization of the contents of said document(s) is inaccurate, incomplete or both, it is denied.

23.     The NSR Rules Circular is publicly available on NSR's web site and is, therefore, "provided" to the general public including entities such as those identified by Plaintiffs. Accordingly, NSR denies that it did not provide those entities with that document. NSR admits that it did not provide the "Miscellaneous Waybills" to those entities identified by Plaintiffs. NSR states that it does not have any transportation contracts in place with the entities identified by Plaintiffs and, therefore, admits that it did not provide an "Intermodal Transportation Agreement" to said entities.

24.     This matter involves subrogation claims by Plaintiffs for alleged loss or damage to freight shipped by their insureds, Kubota Corporation ("Kubota"), Hitachi, Ltd. ("Hitachi"), Hoshizaki Electric Company ("Hoshizaki"), and Canon Finetech Industries, Ltd. ("Canon")(hereinafter collectively, "the Insureds"). See, generally, Complaint filed herein. The Insureds' freight had been loaded in twenty intermodal containers in Japan and China and had been shipped *via* ocean carrier from Asia to Long Beach, California. In Long Beach, the containers were loaded onto a train for transport eastward to various destinations in the State of Georgia.

25.     Plaintiffs' insured, Kubota, appears as the shipper on the bills of lading issued by Yang Ming Marine Transport Corp. Ex. 3 to the Declaration of Thomas Eagan ("Eagan Declaration"); Dkt. No. 12-4.

26. Plaintiffs' insured, Hitachi, appears as the shipper on bills of lading issued by Nippon Express.  Ex. 5 to Eagan Declaration; Dkt. No. 12-6.

27. Plaintiffs' insured, Hoshizaki, appears as the shipper on a bill of lading issued by Sumitrans Corporation.  Ex. 7 to Eagan Declaration; Dkt. No. 12-8.

28. Plaintiffs' insured, Canon, appears as the shipper on a bill of lading issued by NYK.  Ex. 8 to Eagan Declaration; Dkt. No. 12-9.

29. Rail transportation of the containers at issue began in Long Beach, California on rail lines owned and operated by The BNSF Railway ("BNSF").  In Dallas, Texas, the containers with the Insureds' freight were interchanged from the BNSF to NSR[1] for the final leg of their rail transport.  Declaration of Chris Luebbers In Support of Defendants' Counter-Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Luebber's Declaration"),[2] at ¶ 7.  Soon after leaving Dallas, however, the train derailed.

30. BNSF generated its own waybills when it accepted the containers from the ocean carrier in Long Beach, California.  For all of the containers but one, those waybills identify "Yang Ming Marine Line" as both the shipper and consignee of the containers.  Exhibit A to Declaration of Charles L. Howard In Support of Defendants' Counter-Statement of Undisputed Material Facts Per Local Rule 56.1 ("Howard Declaration").[3]  Luebbers Declaration at ¶ 4.

31. When the containers were interchanged in Dallas, NSR generated its own "miscellaneous waybills" which also identify "Yang Ming Marine Line" as both the shipper and

---

[1] In Dallas, the containers were loaded onto a train operated by defendant, KCS.  KCS was transporting the containers to Meridian, Mississippi, at which point they were to be loaded onto an NSR train.  Pursuant to a haulage agreement in place between KCS, KCS was transporting the containers on behalf of NSR.  NSR was responsible for the containers while they were in KCS' possession.

[2] The Luebbers Declaration is being filed contemporaneously with Defendants' Counter-Statement of Undisputed Material Facts.

[3] The Howard Declaration and exhibits thereto are being file contemporaneously with Defendants' Counter-Statement of Undisputed Material Facts.

consignee of the containers. (Miscellaneous Waybills are attached as Ex. 12 to the Eagan Declaration; Dkt. No. 12-13. Yang Ming appears as the shipper and the consignee on BNSF's and NSR's waybills because it was Yang Ming which had arranged for the rail movement of the containers from Long Beach to Georgia, and it was Yang Ming to whom NSR would submit its bill for the rail services provided pursuant to a rail service agreement it had in place with NSR. Luebber's Declaration, at ¶ 6.

32. The BNSF and NSR waybills for the container, which did not involve Yang Ming, identify "NYK International" as the shipper and consignee. Luebber's Declaration, at ¶ 5. NYK appears as the shipper and the consignee on BNSF's and NSR's waybills because it was NYK that had arranged for the rail movement of the container from Long Beach to Georgia, and it was NYK to whom NSR would submit its bill for the rail services provided pursuant to a rail service agreement it had in place with NSR. Luebber's Declaration, at ¶ 6.

33. On August 12, 2004**,** NSR entered into a transportation contract with Yang Ming (America) Corp., as agent for Yangming Marine Transport (collectively, "Yang Ming"), which governs the shipment of intermodal containers tendered by Yang Ming to NSR for rail transport. The agreement was entitled, "Intermodal Transportation Agreement" ("YMITA"). The YMITA went into effect on June 1, 2004, is not due to expire on until May 31, 2009. The YMITA is attached as Exhibit B to the Howard Declaration.

34. The YMITA identifies and provides for, *inter alia*, specific services under specified rates and conditions that NSR shall provide to Yang Ming when providing rail services to Yang Ming. See, generally, Exhibit B to Howard Declaration.

35. The Miscellaneous Waybills for each of the containers which Plaintiffs referenced in paragraphs 1 – 5 of Plaintiffs' Rule 56.1 Statement identify NSR points of origin and destination that are covered by the YMITA. Exhibit 12 to Eagan Declaration; Dkt. No. 12-13. Luebbers Declaration, at ¶ 9.

36. The YMITA governs NSR's obligations with respect to the rail transport of the intermodal containers identified in paragraphs 1 – 5 of Plaintiffs' Rule 56.1 Statement, all of which were tendered to NSR by Yang Ming. See, generally, Exhibit B to Howard Declaration.

37. On April 1, 2003, NSR entered into a transportation contract with NYK Line (North America), Inc. (hereinafter, "NYK"), which governs the shipment of intermodal containers tendered by NYK to NSR for rail transport. The agreement was entitled, "Intermodal Transportation Agreement" ("NYKITA"). The NYKITA went into effect on April 1, 2003 for a term of three years. On June 18, 2004, the parties to the NYKITA amended their agreement by extending its term until October 31, 2007. The NYKITA is attached as Exhibit C to Howard Declaration.

38. The NYKITA identifies and provides for, *inter alia*, specific services under specified rates and conditions that NSR shall provide to NYK when providing rail services to NYK. See, generally, Exhibit C to Howard Declaration.

39. The NYKITA governs NSR's obligations with respect to the rail transport of the intermodal container identified in paragraphs 6 of Plaintiffs' Rule 56.1 Statement, which was tendered to NSR by NYK. See, generally, Exhibit C to Howard Declaration.

40. The Miscellaneous Waybill for the container which Plaintiffs referenced in paragraph 6 of Plaintiffs' Rule 56.1 Statement identifies NSR points of origin and destination

that are covered by the NYKITA. Ex. 12 to the Eagan Declaration; Dkt. No. 12-13. Luebbers Declaration, at ¶ 9.

          Respectfully submitted,

          **KEENAN COHEN & HOWARD P.C.**

By:     /s/ Charles L. Howard
        Charles L. Howard
        One Pitcairn Place
        165 Township Line Road, Suite 2400
        Jenkintown, PA 19046
        Telephone:  (215) 609-1110
        Facsimile:  (215) 609-1117
        E-mail:  choward@freightlaw.net

and

        Barry N. Gutterman
        Gutterman & Associates
        The Lincoln Building
        60 East 42nd Street, 46th Floor
        New York, NY 10165

        Attorneys for Defendants
        Norfolk Southern Corporation, Norfolk
        Southern Railway Company and Kansas
        City Southern Railways

Dated: September 21, 2007

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel, hereby certify that on September 21, 2007, a true and correct copy of the foregoing Defendants' Counter-Statement of Undisputed Material Facts Per Local Rule 56.1 was filed electronically. Notice of this filing will be sent to the following party, listed below, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> David T. Maloff, Esquire
> Thomas M. Eagan, Esquire
> MALOFF BROWNE & EAGAN LLC
> 411 Theodore Fremd Avenue, Suite 190
> Rye, New York 10580-1411
>
> *Attorneys for Plaintiffs*

By:   /s/ Charles L. Howard
        Charles L. Howard