UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

SOMPO JAPAN INSURANCE COMPANY OF     :
AMERICA and SOMPO JAPAN INSURANCE,
INC.,                                :

                 Plaintiffs,         :

          - against -                :        07 Civ. 2735 (DC)

NORFOLK SOUTHERN RAILWAY COMPANY,    :
NORFOLK SOUTHERN CORPORATION and
THE KANSAS CITY SOUTHERN RAILWAY     :
COMPANY,
                 Defendants.         :

- - - - - - - - - - - - - - - - -x       OPINION

NIPPONKOA INSURANCE COMPANY LTD.,    :

                 Plaintiff,          :

          - against -                :        07 Civ. 10498 (DC)

NORFOLK SOUTHERN RAILWAY COMPANY     :
and THE KANSAS CITY SOUTHERN
RAILWAY COMPANY,                     :

                 Defendants.         :

- - - - - - - - - - - - - - - - -x

APPEARANCES:          (See last page)

CHIN, Circuit Judge

        Plaintiffs Sompo Japan Insurance Company of America

and Sompo Japan Insurance, Incorporated (together, "Sompo") and

Nipponkoa Insurance Company Limited ("Nipponkoa") insured cargos

that were being transported on a train that derailed in Texas in

2006.  Defendants Norfolk Southern Railway Company ("NSR"),
Norfolk Southern Corporation, and Kansas City Southern Railway
Company operated the derailed train and the track on which it
ran.

Sompo and Nipponkoa sued defendants, asserting claims
under federal statutory and common law.  Following extensive
earlier proceedings, I issued an opinion on September 4, 2012,
granting in part and denying in part defendants' motions for
summary judgment and denying plaintiffs' cross-motions.  Sompo
Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 891 F. Supp. 2d 489
(S.D.N.Y. 2012).  Thereafter, the parties filed cross-motions
for reconsideration and renewed their cross-motions for summary
judgment.  For the reasons set forth below, the parties'
respective motions are granted in part and denied in part.

## BACKGROUND

The relevant facts and procedural history are
described in detail in my previous opinions,[1] and I repeat them

---

[1]      Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 891
F. Supp. 2d 489 (S.D.N.Y. 2012); Sompo Japan Ins. Co. of Am. v.
Norfolk S. Ry. Co., 652 F. Supp. 2d 537 (S.D.N.Y. 2009), vacated
in part sub nom. Nipponkoa Ins. Co. v. Norfolk S. Ry. Co., 394
F. App'x 751 (2d Cir. 2010) (summary order); Sompo Japan Ins.
Co. of Am. v. Yang Ming Marine Transp. Corp., 578 F. Supp. 2d
584 (S.D.N.Y. 2008), abrogated in part by Rexroth Hydraudyne
B.V. v. Ocean World Lines, Inc., 547 F.3d 351 (2d Cir. 2008);
Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 553 F. Supp.

here only to the extent necessary for an understanding of the
issues now before the Court.  The facts are undisputed, except
as to those relating to plaintiffs' claim regarding the Enplas
shipment, which are presented in the light most favorable to
defendants, with all reasonable inferences drawn in their favor.
See Gary Fredrich Enters., LLC v. Marvel Characters, Inc., 716
F.3d 302, 308 (2d Cir. 2013).

**A.  Facts**

    **1.  Sompo-Insured Cargos**

       Sompo insured various cargos shipped by Kubota Tractor
Corporation ("Kubota"), Hoshizaki Electric Company
("Hoshizaki"), Canon, Incorporated ("Canon"), and Unisia of
Georgia Corporation ("Unisia"), each acting as consignee for
Hitachi, Limited ("Hitachi").  Sompo, 891 F. Supp. 2d at 492.
In March 2006, these companies each arranged for their
respective cargo to be transported first by ship from several
points in Japan and China to California, and then by train from
California to Georgia.  Id. at 492-93.

       Kubota, Hoshizaki, and Canon, each directly or through
an intermediary, hired Yang Ming Marine Transport Corporation
("Yang Ming"), an ocean carrier, to carry the cargos for the sea

2d 348 (S.D.N.Y. 2008); Sompo Japan Ins. Co. of Am. v. Norfolk
S. Ry. Co., 540 F. Supp. 2d 486 (S.D.N.Y. 2008).

leg of the trip.  Hitachi, through its consignee Unisia,
contracted Nippon Express U.S.A. (Illinois) ("Nippon Express")
to provide the transportation.  Id. at 493.  Nippon Express is a
non-vessel operating common carrier ("NVOCC"), an entity that
arranges transportation for hire and assumes liability for the
goods being transported but does not undertake actual
transportation of the goods.  Id. at 493 n.4 (citing Royal & Sun
Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 140
n.2 (2d Cir. 2010) (citation omitted)).  Nippon Express issued
to Hitachi/Unisia a bill of lading, id., which is a document
that records a carrier's receipt of goods from the shipper,
states the terms of carriage, and evinces a contract for
carriage, Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18-19 (2004)
(citations omitted).  Nippon Express in turn engaged Yang Ming
to carry the cargos for the sea leg of the trip.  Sompo, 891 F.
Supp. 2d at 493.

    Yang Ming issued to each of its customers sea
waybills, Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 540
F. Supp. 2d 486, 489 (S.D.N.Y. 2008), which are like bills of
lading with differences not relevant here, see Delphi-Delco
Elecs. Sys. v. M/V Nedlloyd Europa, 324 F. Supp. 2d 403, 424-25
(S.D.N.Y. 2004).  Yang Ming delivered the cargos to California,
where they were transported to Dallas, Texas, on rail lines

- 4 -

owned and operated by Burlington Northern Santa Fe Railway
Company.  Sompo, 891 F. Supp. 2d at 493.  In Dallas, the cargos
were transferred to NSR for the final leg of inland carriage to
Georgia.  Id.  The train operated by defendants derailed near
Dallas, Texas on April 18, 2006, resulting in damage to the
cargos on board.  Id. at 492.

### 2.   Nipponkoa-Insured Cargos

Nipponkoa insured cargos shipped by Enplas Corporation
("Enplas") and Fuji OOZX Incorporated ("Fuji").  Id. at 493.
Enplas and Fuji each hired Nippon Express to transport their
respective cargos, which were transported in the same manner as
that of the Sompo-insured Unisia shipment and damaged in the
same train derailment.  Id. at 492-94.

### 3.   Enplas Assignment

Following the train accident, Enplas, its cargo
underwriter Tokio Marine Claims Services, Incorporated ("Tokio
Marine"), Nippon Express, its insurer Nipponkoa, Yang Ming, and
NSR settled their various claims against one another.  In
exchange for $147,717, Enplas assigned its right to make claims
against the carriers to Tokio Marine, acting through its claim
servicer TM Claim Service, Incorporated ("TM Claim Service").
(Ex. R to Decl. of Thomas M. Eagan in Opp'n to Defs.' Mot. for
Summ. J., Aug. 12, 2011 ("Eagan 8-12-2011 Decl.")).  TM Claim

Service assigned its rights in the Enplas claim to Nipponkoa, acting through W.K. Webster (Overseas) Limited ("W.K. Webster"), in exchange for $100,000.  (Id. Exs. I, J).  Nipponkoa/W.K. Webster also received an assignment from Yang Ming of any rights it might have in the Enplas claim, in consideration of W.K. Webster's agreement to indemnify Yang Ming.  (See Ex. V to Pls.' Reply Mem. of Law in Further Supp. of Their Mots. for Summ. J. and in Further Opp'n to Defs.' Mots. for Summ. J. and Recons., Nov. 21, 2012 ("Pls.' 11-21-2012 Reply Mem. of Law"); see also Exs. A, B to Decl. of Charles L. Howard in Supp. of Defs.' Combined Resp. to Pls.' Mot. for Recons., Nov. 7, 2012 ("Howard 11-7-2012 Decl.")).  Nipponkoa/W.K. Webster attempted but ultimately failed to reach a settlement with NSR.  (See Eagan 8-12-2011 Decl. Ex. N).

NSR had been hired by Yang Ming as the inland rail carrier pursuant to the Intermodal Transportation Agreement ("ITA") between them.  (See Ex. 14 to Decl. of Charles L. Howard in Supp. of Defs.' Mot. for Summ. J., June 29, 2011 ("Howard 6-29-2011 Decl.")).  The ITA incorporated by reference the terms of NSR's Intermodal Transportation Rules Circular No. 2 ("Rules Circular").  Sompo, 891 F. Supp. 2d at 499.

Section 12(B)(1) of the ITA provided:

> [NSR] will be liable for and will hold
> Yangming harmless against loss of or damage
> to freight in containers transported at the
> rates and charges provided in this Agreement
> . . . only to the extent that the sole
> proximate cause of said loss or damage is a
> railroad accident, derailment, or collision
> between railroad equipment negligently
> caused by [NSR].  [NSR's] liability for
> freight loss and damage will be subject to
> the dollar limitation set forth in the Rules
> Circular . . . .

(Howard 6-29-2011 Decl. Ex. 14).

Section 12(B)(3) of the ITA required Yang Ming, when making any claim against NSR, to comply with the procedures set forth in the Rules Circular.  (Id.).  The Rules Circular provided, in sections 8.3.3(j) and 8.3.3(e) respectively, that NSR will be under no obligation to process claims by anyone but Yang Ming, and that NSR's liability is limited to "the lesser of the destination value of the cargo or $250,000."  (Eagan 8-12-2011 Decl. Ex. E).  See Sompo, 891 F. Supp. 2d at 499 (Yang Ming is the Rail Service Buyer identified in the Rules Circular). Section 8.7.4(b) also provided that lawsuits against NSR shall be filed only in a court sitting in certain parts of Virginia, Georgia, Illinois, the origin or destination of the shipment, or where the damage occurred.  (Eagan 8-12-2011 Decl. Ex. E).

- 7 -

B.   **Procedural History**

On September 4, 2012, I granted in part and denied in part defendants' motions for summary judgment and denied plaintiffs' cross-motions for summary judgment. <u>Sompo</u>, 891 F. Supp. 2d at 492.  I dismissed plaintiffs' claims pursuant to the Carmack Amendment, holding that the Carmack Amendment "'does not apply to a shipment originating overseas under a single through bill of lading.'"  <u>Id.</u> at 494-95 (quoting <u>Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.</u>, 130 S. Ct. 2433, 2442 (2010)).

Regarding plaintiffs' contract, tort, and bailment claims, defendants argued that the bills of lading issued by the carriers contain so-called "covenants not to sue" -- agreements by the shippers not to sue any entity other than the carrier that issued the bill.  <u>See id.</u> at 495.  Plaintiffs did not dispute that for the Hoshizaki and Canon shipments, the bills of lading issued by their respective carriers contain such a covenant.  <u>See id.</u> at 496.  For the Kubota shipment, however, plaintiffs argued that the Yang Ming bill of lading should be construed so as not to include such a covenant.  <u>See id.</u> at 495.

I held that the provisions of the Yang Ming bill of lading constitute an agreement by plaintiffs' insureds not to sue any entity other than Yang Ming.  <u>See id.</u> at 497.  I further held that defendants are beneficiaries of the parties' covenant

- 8 -

not to sue by operation of the bill's Himalaya Clause, which
extends the protection of the liability limitations to
downstream carriers contracted by Yang Ming.  See id. at 501-03.
Moreover, I rejected plaintiffs' argument that the covenants not
to sue are void under the Harter Act.  See id. at 501-02.
Accordingly, I dismissed all of the claims pertaining to the
Kubota, Canon, and Hoshizaki shipments in Sompo.  Id. at 503.

As to the Hitachi/Unisia shipment in Sompo and the
Enplas and Fuji shipments in Nipponkoa, plaintiffs argued that
the bill of lading issued by Nippon Express does not contain a
covenant not to sue.  See id. at 495.  I concluded that the
Nippon Express bill of lading is ambiguous as to whether the
plaintiffs may sue any entity other than Nippon Express.  See
id. at 498.  I determined that extrinsic evidence was needed to
discern the parties' intent as to the meaning of the Nippon
Express bill of lading, and denied the parties' cross-motions
for summary judgment on the claims arising under it.  See id. at
499.  I deferred ruling on the parties' other arguments
concerning these claims until resolution of the meaning of the
Nippon Express bill of lading.  Id. at 503.

DISCUSSION

A.    Summary Judgment Standard

A court shall grant summary judgment if the party moving for summary judgment shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the non-moving party's favor.  See SEC v. Obus, 693 F.3d 276, 284 (2d Cir. 2012).

B.    Contract, Tort, and Bailment Claims

Before the Court are the parties' cross-motions for reconsideration and renewed cross-motions for summary judgment. Plaintiffs submit extrinsic evidence as to the meaning of the Nippon Express bill of lading and argue that the parties intended for the Carmack Amendment to apply and to permit the shippers to sue the downstream carrier responsible for damage to the cargos.  (See Pls.' Mem. of Law in Further Supp. of Their Mots. for Summ. J. and in Further Opp'n to Defs.' Mots. for Summ. J. and Recons., Nov. 5, 2012 ("Pls.' 11-5-2012 Mem. of Law") at 3-9).  Plaintiffs further argue that if the Nippon Express bill of lading is ambiguous as to who may be sued, this Court should resolve the ambiguity against defendants.  (See

Pls.' Mem. of Law. in Supp. of Their Mot. for Partial Recons.,
Sept. 14, 2012 ("Pls.' 9-14-2012 Mem. of Law") at 2-4).

        Defendants argue that any ambiguity as to the
provisions of the Nippon Express bill of lading need not be
resolved.  They argue that under Kirby, they are entitled to the
benefit of the liability limitations in both the Nippon Express
and Yang Ming bills of lading, and that the Yang Ming bill of
lading unambiguously precludes the plaintiffs from suing them.
(See Defs.' Mem. of Law in Supp. of Their Mot. for Recons.,
Sept. 18, 2012 ("Defs.' 9-18-2012 Mem. of Law") at 5-9; Defs.'
Combined Resp. to Pls.' Mots. for Recons., Nov. 7, 2012 ("Defs.'
11-7-2012 Resp.") at 3).  Additionally, the parties make various
arguments regarding the issues on which I had previously
deferred ruling and the issue of damages.

    1.    Interpretation of the Bills of Lading

        a.    Applicable Law

        "When an intermediary contracts with a carrier to
transport goods, the cargo owner's recovery against the carrier
is limited by the liability limitation to which the intermediary
and carrier agreed."  Kirby, 543 U.S. at 33.  Although the
intermediary is not the cargo owner's agent in every sense,
"when it comes to liability limitations for negligence resulting

- 11 -

in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages."  Id.

In Kirby, the Supreme Court held that where there are two bills of lading -- one issued by an intermediary-NVOCC to the cargo owner and another issued by the NVOCC's ocean carrier to the NVOCC -- downstream carriers are "entitled to the protection of the liability limitations in the two bills of lading," provided they contain Himalaya Clauses extending the liability limitations to downstream carriers.  Id. at 36.

### b.   Application

I have already held that the Yang Ming bill of lading unambiguously prohibits plaintiffs from suing any entity other than Yang Ming.  See Sompo, 891 F. Supp. 2d at 497.  For the Unisia, Fuji, and Enplas shipments, two bills of lading are potentially applicable:  the first issued by Nippon Express to each shipper, and a second issued by Yang Ming to Nippon Express.  For these three shipments, I must determine whether defendants are entitled to the protection of the covenant not to sue in the Yang Ming bill of lading, regardless of whether the Nippon Express bill of lading, standing alone, would otherwise permit them to sue defendants.

The facts in these cases are indistinguishable from the facts in Kirby.  In that case, Kirby, the shipper, hired

- 12 -

International Cargo Control ("ICC"), a freight forwarder, to
arrange for transportation of Kirby's machinery from Australia
to Huntsville, Alabama.  Kirby, 543 U.S. at 18.  ICC issued a
bill of lading to Kirby.  Id.  ICC in turn hired Hamburg Sud, an
ocean shipping company, to transport the goods for the sea leg
of the trip.  Id. at 21.  Hamburg Sud issued its own bill of
lading to ICC.  Id.  Hamburg Sud, through a subsidiary, hired
NSR to transport Kirby's machinery for the inland leg of the
trip.  Id.  NSR's train derailed en route, damaging Kirby's
machinery.  Id.  Kirby and its insurer sued NSR.  Id.  NSR
argued that Kirby's potential recovery was limited by the
liability limitations contained in the ICC and Hamburg Sud bills
of lading.  Id.  While both bills of lading contained Himalaya
Clauses extending their liability limitations to downstream
carriers like NSR, the two bills contained different dollar
limits on liability -- the ICC bill set an amount higher than
that in the Hamburg Sud bill.  See id. at 19-21.

        To give NSR the "full relief for which it petitioned,"
the Court interpreted both bills of lading.  Id. at 32.  It
first held that NSR is entitled to the benefit of the liability
limitation in the ICC bill of lading by virtue of the Himalaya
Clause in that bill.  See id.  The Court then construed the
Hamburg Sud bill of lading and held that NSR is also entitled to

- 13 -

the benefit of its provisions.  See id. at 34-35.  The Court
reasoned that ICC, as the intermediary with whom Kirby
contracted, was Kirby's agent for the limited purpose of
contracting with subsequent carriers for limitations of
liability.  See id. at 34.  Therefore, the Court explained,
Kirby was bound to the liability limitations in the Hamburg Sud
bill of lading, even though those terms were less generous than
those of the ICC bill of lading.  See id. at 35.  The Court
opined that this produced an equitable result, as Kirby retained
the option to sue ICC, who "should bear responsibility for any
gap between the liability limitations in the bills" because ICC
was the "only party that definitely knew about and was party to
both of the bills of lading."  Id.

        Applying the same analysis to these cases, I hold that
defendants are entitled to the protection of the liability
limitations in both the Nippon Express and Yang Ming bills of
lading.  Nippon Express, as agent of Unisia, Enplas, and Fuji,
had authority to bind them to the terms of the Yang Ming bill of
lading.  The Yang Ming bill of lading constitutes an agreement
by plaintiffs not to sue any entity other than Yang Ming.  The
Himalaya Clause in the Yang Ming bill of lading entitles
defendants to the protection of this covenant not to sue, and
thus precludes plaintiffs from suing them.

- 14 -

Plaintiffs attempt to distinguish <u>Kirby</u> on several grounds.  First, they argue that <u>Kirby</u> limited the scope of the intermediary's agency to contracting for liability limitations only, and that a covenant not to sue is distinct from a liability limitation.[2]  <u>See</u> <u>Royal & Sun Alliance Ins. PLC v.</u> <u>Ocean World Lines, Inc.</u>, 572 F. Supp. 2d 379, 397-98 (S.D.N.Y. 2008), <u>aff'd</u>, 612 F.3d 138 (2d Cir. 2010).

Although the liability limitations involved in <u>Kirby</u> happened to be dollar limitations rather than covenants not to sue, nothing in <u>Kirby</u> can be read to exclude covenants not to sue as a type of liability limitation.[3]  Even the district court in <u>Royal & Sun Alliance</u> defined a liability limitation as a provision that "expresses the shipper's option to rely on its own insurance, rather than the carrier or the carrier's

---

[2]    Notwithstanding that I already found -- and the parties at that time did not dispute -- that "each bill of lading contains a valid Himalaya Clause extending the bill's liability limitations, including the limitations on what entity can be sued under the bill," <u>see</u> <u>Sompo</u>, 891 F. Supp. 2d at 501, I address this argument anew.

[3]    Although the district court in <u>Royal & Sun Alliance</u> <u>Ins. PLC v. Ocean World Lines, Inc.</u>, 572 F. Supp. 2d 379 (S.D.N.Y. 2008), <u>aff'd</u>, 612 F.3d 138 (2d Cir. 2010), distinguished covenants not to sue from liability limitations, I conclude that the district court's reasoning is irreconcilable with <u>Kirby</u> and decline to adopt it here.  Although the Court of Appeals affirmed the district court's judgment in <u>Royal & Sun</u> <u>Alliance</u>, it did so without discussing the district court's ruling on this point, as the parties did not appeal the issue. <u>See</u> <u>Royal & Sun Alliance</u>, 612 F.3d at 143 n.11.

- 15 -

insurance, in case the goods are damaged during shipment."
Royal & Sun Alliance, 572 F. Supp. 2d at 397.  A covenant not to
sue fits this definition.  Plaintiffs argue that "limitation of
liability clauses" is a term of art in the shipping industry
referring only to limitations on dollar amounts.  (See Pls.' 11-
5-2012 Mem. of Law at 11-12).  The authority cited by
plaintiffs, however, does not support this assertion.  (See id.
Ex. U (defining limitation of liability clauses and providing as
but one example a provision limiting the dollar amount of a
carrier's liability)).  I reaffirm my prior ruling that the
liability limitations in these cases encompass limitations on
what entity can be sued under the bills of lading.

        Plaintiffs next argue that the equities weigh against
enforcing the covenants not to sue against them.  They argue
that binding "unsuspecting shippers" to the terms of a contract
to which they did not agree would contravene industry practices
and undermine Kirby's concerns about "promoting
nondiscrimination in common carriage."  543 U.S. at 35.  (See
Pls.' 11-5-2012 Mem. of Law at 14-15).  The Kirby Court,
however, held that the limited agency rule tracks the practices
of the intermodal transportation industry:  cargos often change
hands many times during transport and carriers should be able to
rely on liability limitations in their contract with an

intermediary without the "very costly or even impossible" task
of ascertaining the obligations that are outstanding among all
of the parties involved in the transportation.  543 U.S. at 34-
35.  The Court explained that a contrary rule might cause
downstream carriers to distinguish between cargo owners and
intermediary shippers, and thereby undermine statutory and
decisional law promoting nondiscrimination in common carriage.
Id. at 35.

While plaintiffs suggest that these concerns apply
equally to "unsuspecting shippers," the difference between a
shipper and a downstream carrier is that the shipper authorized
its intermediary to act on its behalf, and thus is bound to the
terms of the contract to which its agent agreed.  To the extent
that there is a gap between the liability limitations in two
bills of lading, the shipper's recourse is against its agent,
the intermediary that was party to both bills of lading.  See
id.[4]

_____

[4]      It is not lost on the Court that plaintiffs are both
the subrogees of the shippers' rights and the insurers of the
intermediary, Nippon Express.  By insuring Nippon Express,
plaintiffs bore the risk that in case the cargos were damaged,
they would be obliged to indemnify Nippon Express yet have
limited recourse against third parties with whom Nippon Express
had contracted.  See Royal & Sun Alliance, 572 F. Supp. 2d at
392.  Plaintiffs charged Nippon Express insurance premiums
reflective of these risks and subsequently settled with third
parties to mitigate their risk of collection; permitting them

Finally, plaintiffs argue that Regal-Beloit left open the question of whether the terms of a particular bill of lading would be binding on shippers when another bill of lading governing the same shipment contains inconsistent terms. (See Pls.' 11-5-2012 Mem. of Law at 16-17).  The portion of Regal-Beloit on which plaintiffs rely is the Court's dicta on what the parties' rights might have been if the Carmack Amendment applied.  130 S. Ct. at 2445.  The Carmack Amendment imposes its own rules,[5] which are inapplicable here because the Carmack Amendment does not control.

In summary, I hold that defendants are entitled to the benefit of the liability limitations in the Yang Ming bill of lading and that such limitations encompass restrictions on what entity can be sued under the bill.  The liability limitations in the Yang Ming bill of lading provide that plaintiffs may not sue anyone other than Yang Ming.

---

now to avoid the consequences of the liability limitations in the bills of lading would create a windfall for them.  See id. at 398.

[5]     For example, the Carmack Amendment makes a subsequent bill of lading void unless the second bill of lading represents the initiation of a new shipment for which the connecting carrier has received separate consideration.  Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 130 S. Ct. 2433, 2443 (2010) (citing Mexican Light & Power Co. v. Tex. Mexican Ry. Co., 331 U.S. 731, 734 (1947)).

In light of this conclusion, I need not resolve the
ambiguity in the contested provisions of the Nippon Express bill
of lading or construe the ambiguity against defendants.[6]  See
Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd
Brasileiro, 775 F.2d 476, 482 (2d Cir. 1985) ("bills of lading
are contracts of adhesion and, as such, are strictly construed
against the carrier"); Toyomenka, Inc. v. S.S. Tosaharu Maru,
523 F.2d 518, 521 (2d Cir. 1975) (bill of lading "strictly
construed against the parties whom it is claimed to benefit").
Irrespective of the provisions of the Nippon Express bill of
lading, the Yang Ming bill of lading precludes plaintiffs from
bringing claims against defendants.  See Kirby, 543 U.S. at 35-
36.  This conclusion is dispositive of the issues on which I had
deferred ruling in my opinion of September 4, 2012.  See Sompo,
891 F. Supp. 2d at 503.  Accordingly, I dismiss all of
plaintiffs' claims arising out of the Hitachi/Unisia shipment in
Sompo, and the Fuji shipment in Nipponkoa.  I discuss the Enplas
shipment in Nipponkoa separately below.

---

[6]     In any event, the extrinsic evidence submitted by
plaintiffs shed little light on the meaning of the Nippon
Express bill of lading.  (See Pls.' 11-5-2012 Mem. of Law Ex. T;
Decl. of Atsushi Maeda in Supp. of Nipponkoa's Mot. for Summ.
J.; Decl. of Peter J. Zambito in Supp. of Nipponkoa's Mot. for
Summ. J.).

2.    <u>Enplas Assignment</u>

Nipponkoa contends that it received an assignment of Yang Ming's rights with respect to the Enplas shipment, and therefore it is entitled to make claims directly against defendants under the terms of the ITA that existed between Yang Ming and NSR.

a.    <u>Applicable Law</u>

"An assignment is a contractual transfer of a right, interest, or claim from one person to another. . . . [A]n assignee stands in the shoes of the assignor and subject to all equities against the assignor." <u>Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)</u>, 379 B.R. 425, 435 (S.D.N.Y. 2007) (citations and internal quotation marks omitted).  An assignee "takes all rights of the assignor, no greater and no less." <u>O'Brien v. Argo Partners, Inc.</u>, 736 F. Supp. 2d 528, 535 (E.D.N.Y. 2010) (citations and internal quotation marks omitted); <u>see</u> <u>Furlong v. Shalala</u>, 156 F.3d 384, 392 (2d Cir. 1998).  These rights can include the right of an assignee to bring suit for collection of monies owed to the assignor.  <u>See</u> <u>Spring Commc'ns Co. v. APCC Servs., Inc.</u>, 554 U.S. 269, 284-85 (2008).

Under the doctrine of res ipsa loquitur, a plaintiff is entitled to a presumption of the defendant's negligence if

the plaintiff establishes that:  (1) the event giving rise to plaintiff's injury was "of a kind which ordinarily does not occur in the absence of someone's negligence;" (2) "caused by an agency or instrumentality within the exclusive control of the defendant;" and (3) "not due to any voluntary action or contribution on the part of the plaintiff." St. Paul Fire & Marine Ins. Co. v. City of New York, 907 F.2d 299, 302 (2d Cir. 1990); see Ruddy v. N.Y. Cent. R.R. Co., 224 F.2d 96, 98 (2d Cir. 1955).  A defendant may rebut the presumption with competent evidence, and the plaintiff retains the burden of proof on the ultimate question of defendant's negligence. See Jesionowski v. Boston & M.R.R., 329 U.S. 452, 456-58 (1947); Lehigh Valley R. Co. v. Ciechowski, 10 F.2d 82, 84 (2d Cir. 1925).  While a negligence claim involves questions ordinarily resolved by a jury, summary judgment may be granted in appropriate cases where only one conclusion may be drawn from the established facts. See Petitt v. Celebrity Cruises, Inc., 153 F. Supp. 2d 240, 259 (S.D.N.Y. 2001) (collecting cases).

b.   Application

Defendants do not dispute that the provisions of the ITA and Rules Circular permit Yang Ming to make claims directly against NSR, but they dispute that Nipponkoa received an assignment of rights from Yang Ming that would permit Nipponkoa

to make claims directly against NSR.  (<u>See</u> Defs.' 11-7-2012
Resp. at 4-7; Defs.' Combined Br. in Reply to Pls.' Mem. of Law
in Further Supp. of Their Mot. for Summ. J. and in Further Opp'n
to Defs.' Mots. for Summ. J. and Recons., Nov. 21, 2012 ("Defs.'
11-21-2012 Reply Mem. of Law") at 11).

      I hold, as a matter of law, that Nipponkoa received an
assignment from Yang Ming of "all title[,] interest and rights
which it has or may have in any claim or claims against each and
every transportation subsidiary of Norfolk Southern Corporation"
and authorized Nipponkoa to "receive payments in settlement" of
the Enplas claim.  (Pls.' 11-21-2012 Reply Mem. of Law Ex. V;
<u>see also</u> Howard 11-7-2012 Decl. Exs. A, B).  As Yang Ming's
assignee, Nipponkoa possesses all of Yang Ming's rights under
the ITA and Rules Circular, <u>see</u> <u>O'Brien</u>, 736 F. Supp. 2d at 535,
including Yang Ming's right to make claims against NSR for
damages to the Enplas shipment.  (<u>See</u> Howard 6-29-2011 Decl.
Ex. 14; Eagan 8-12-2011 Decl. Ex. E).  That Nipponkoa is
otherwise precluded from suing defendants by operation of the
covenant not to sue in the Yang Ming bill of lading, <u>see</u>
Discussion Section B(1)(b), <u>supra</u>, is an issue separate and
distinct from its right to step into Yang Ming's shoes and
enforce the contract between Yang Ming and NSR.

Section 12(B)(1) of the ITA provides that NSR will be liable for and indemnify Yang Ming for damages to the Enplas shipment negligently caused by NSR. (See Howard 6-29-2011 Decl. Ex. 14). I hold that Nipponkoa is entitled to a presumption of defendants' negligence because: (1) "[d]erailments are extraordinary, not usual, happenings" that do not occur in the absence of someone's negligence, Jesionowski, 329 U.S. at 458; (2) defendants do not dispute that they had exclusive control over the derailed train and the track on which it ran; and (3) the derailment was not due to any voluntary action or contribution on the part of Yang Ming (see Exs. 3, 5 to Decl. of Thomas M. Eagan in Opp'n to Defs.' Mot. for Summ. J., Apr. 30, 2009).

Defendants do not contend that they were not negligent, nor have they submitted admissible evidence to rebut the presumption of negligence. (See Defs.' 11-7-2012 Resp. at 5-7; Defs.' 11-21-2012 Reply Mem. of Law at 11-12). Defendants have admitted that the derailment was not caused by an "act of god, public enemy, inherent vice, fault of shipper or public authority." (Ex. 4, ¶ 11 and resp. to Decl. of Thomas M. Eagan in Supp. of Pls.' Mot. for Summ. J., Oct. 16, 2009). Although defendants' counsel represents that an employee of Kansas City Southern Railway Company would testify that the derailment was

caused by thermal misalignment of the tracks, colloquially known as a "sun kink" (see Howard 6-29-2011 Decl. Ex. 16), no admissible evidence was ever produced as to the precise cause of the derailment (see Howard 6-29-2011 Decl. ¶¶ 16, 22, 23; Pls.' Resp. to Defs.' Rule 56.1 Statement, Aug. 12, 2011, ¶ 13 and resp.).  Even assuming a "sun kink" would constitute a defense to a negligence claim, no affidavit from any such employee has been submitted to the Court.  Hence, the record contains no evidence from which a jury could find that a "sun kink" caused the derailment.[7]

The parties have had ample opportunity to conduct discovery in _Nipponkoa_, which has been pending for approximately

---

[7]     Defendants submitted newspaper articles attributing the derailment to a "sun kink."  (Howard 6-29-2011 Decl. Exs. 12, 13).  Newspaper articles are inadmissible hearsay, and thus, cannot be used to defeat summary judgment.  Fridman v. City of New York, 183 F. Supp. 2d 642, 646 n.2 (S.D.N.Y. 2002) (citing Fed. R. Evid. 402; Fed. R. Civ. P. 56).  Even assuming the articles are admissible, however, they do not rebut the presumption of negligence or raise an issue of fact for trial as they make clear that railway companies can and should take reasonable precautionary measures to reduce the likelihood of accidents caused by a "sun kink."  (See Howard 6-29-2011 Decl. Exs. 12, 13 (discussing train speed, track inspections, and track-laying technology and methods as factors affecting "sun kink"-related train derailments); see, e.g., Gary Wolf, Preventing Track Buckles, Interface:  The Journal of Wheel/Rail Interaction, Mar. 10, 2005, available at http://www.interface journal.com/features/03-05/track_buckling/1.html).  On this record, a fact finder could only conclude that defendants had exclusive control of the tracks and were responsible for their maintenance and upkeep.

six years.  Based on the record before the Court, a reasonable
jury could only conclude that defendants' negligence caused the
damages to the Enplas shipment.  Accordingly, I hold as a matter
of law that defendants are liable to Nipponkoa for damages to
the Enplas shipment.

Defendants make two arguments to the contrary, both of
which lack merit.  First, they argue that Yang Ming's only right
under the ITA was to be indemnified by NSR for any damages
related to the Enplas shipment, and because Yang Ming never paid
any such damages, there is no claim for NSR to reimburse.
(Defs.' 11-7-2012 Resp. at 5-6).  Nothing in the ITA, however,
requires Yang Ming to first have made a payment on damages
related to the Enplas shipment.  The indemnification provision
in section 12(B)(1) of the ITA is broadly worded, holding NSR
liable and Yang Ming harmless for damages to the Enplas
shipment.  Moreover, section 12(B)(3) permits Yang Ming to
assign to third parties its "right to make claims" against NSR,
which further supports the interpretation that the ITA afforded
Yang Ming rights to make claims against NSR, not merely seek
reimbursement.  (Howard 6-29-2011 Decl. Ex. 14).

Second, defendants contend that the Rules Circular
identifies specific venues in which a lawsuit against NSR can be
brought and that New York City is not one of them.  (Defs.' 11-

7-2012 Resp. at 6-7).  In their motion to transfer venue

pursuant to 28 U.S.C. § 1404, defendants conceded that venue was

proper in the Southern District of New York and that they were

seeking a transfer to the Northern District of Georgia merely

for the convenience of the parties and witnesses.  (Tr. of Nov.

21, 2007 Oral Argument at 3, ECF No. 38-1).  I denied

defendants' motion to transfer venue for the reasons set forth

in my oral decision of November 21, 2007.  (Id. at 18-20).  I

discern no new basis to reconsider the proprietary of the venue

-- after the parties have litigated the case in this venue for

approximately six years -- and therefore reject the defendants'

argument on this ground.

     As defendants are liable to Nipponkoa for damages to

the Enplas shipment, and the parties have stipulated to $100,000

in damages (Eagan 8-12-2011 Decl. Ex. F), I grant Nipponkoa's

motion for summary judgment as to the Enplas claim and award

Nipponkoa $100,000, plus interest, in damages.

### CONCLUSION

     Defendants are entitled to the protection of the

liability limitations in the Yang Ming bill of lading, whereby

plaintiffs agreed not to sue anyone other than Yang Ming.  These

protections preclude plaintiffs from suing defendants

irrespective of the terms of the Nippon Express bill of lading.

- 26 -

Therefore, defendants' motions for reconsideration and summary judgment are granted in part, and plaintiffs' cross-motions for reconsideration and summary judgment are in denied in part, with respect to the claims arising from the Hitachi/Unisia shipment in Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., No. 07 Civ. 2735, and the Fuji shipment in Nipponkoa Ins. Co. v. Norfolk S. Ry. Co., No. 07 Civ. 10498.  All claims other than Nipponkoa's claim based on the Enplas shipment are dismissed.

Nipponkoa's motions for reconsideration and summary judgment are granted in part, and defendants' cross-motions are denied in part, as respects the Enplas shipment in Nipponkoa Ins. Co. v. Norfolk S. Ry. Co., No. 07 Civ. 10498.  I award damages in the amount of $100,000, plus interest, for Nipponkoa and against defendants.

The parties shall confer on the terms of a proposed judgment, including interest, and they shall submit a proposed judgment within ten days hereof.

SO ORDERED.

Dated:   New York, New York
         August 15, 2013

DENNY CHIN
United States Circuit Judge
Sitting by Designation

- 27 -

## APPEARANCES

Attorneys for Sompo Japan Insurance, Inc., Sompo Japan Insurance
Company of America, and Nipponkoa Insurance Company, Limited:

      MALOOF BROWNE & EAGAN LLC
            By:  David T. Maloof, Esq.
                Thomas M. Eagan, Esq.
      411 Theodore Fremd Avenue, Suite 190
      Rye, New York  10580

Attorneys for Norfolk Southern Railway Company, Norfolk Southern
Corporation, and the Kansas City Southern Railway Company:

      KEENAN COHEN & HOWARD P.C.
            By:  Paul D. Keenan, Esq.
                Charles L. Howard, Esq.
      One Pitcairn Place, Suite 2400
      165 Township Line Road
      Jenkintown, Pennsylvania  19046

              - and -

      GUTTERMAN & ASSOCIATES
            By:  Barry N. Gutterman, Esq.
      The Lincoln Building
      60 East 42nd Street, 46th Floor
      New York, New York  10165